No. 99-291

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 321

302 Mont. 518

15 P. 3d 877

MICHAEL POWELL,

Petitioner/Appellant,

v.

STATE COMPENSATION INSURANCE FUND,

Respondent/Insurer for

SECURITY ARMORED EXPRESS,

Employer/Insured.

APPEAL FROM: Workers' Compensation Court

State of Montana

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Sara R. Sexe, Marra, Wenz & Johnson, Great Falls, Montana

For Respondent:

Ann Clark, Carrie Garber, State Compensation Insurance Fund, Helena, Montana

Submitted on Briefs: December 2, 1999
Decided: December 12, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Michael Powell (Michael) appeals a decision of the Workers' Compensation Court denying his constitutional challenge to § 39-71-1107(3), MCA (1995), governing domiciliary care benefits. We affirm.

¶2 Michael raises the following issue on appeal:

¶3 Whether the statutory cap on domiciliary care benefits as provided in § 39-71-1107(3), MCA (1995), is unconstitutional.

## Factual and Procedural Background

¶4 Michael suffered severe head and facial injuries in a motor vehicle accident that occurred in the course and scope of his employment with Security Armored Express. The accident occurred on October 7, 1995, therefore, the 1995 version of the Workers' Compensation Act governs his benefits. B*uckman v. Montana Deaconess Hosp.* (1986), 224 Mont. 318, 321, 730 P.2d 380, 382 (citing *Trusty v. Consolidated Freightways* (1984), 210 Mont. 148, 151, 681 P.2d 1085, 1087; *Iverson v. Argonaut Ins. Co.* (1982), 198 Mont. 340, 342, 645 P.2d 1366, 1367).

¶5 After the accident, Michael remained in the hospital until October 20, 1995. He was then admitted to the Comprehensive In-Patient Rehab Unit where he remained until November 10, 1995. Upon his discharge from the rehab unit, Dr. Bill Tacke, the rehab physician, recommended that Michael have, at the least, daily supervision.

¶6 In late 1995, Michael began having seizures which cause him to lose consciousness and to lose muscle control. In addition, due to the injuries he sustained in the accident, Michael has attention, concentration and memory difficulties.

¶7 Michael has good days and bad days. On a good day, he bathes and showers himself and walks to the post office to check his mail, buying a cup of coffee along the way. He will occasionally do some cooking and a few household chores. Also on a good day, Michael will walk the seven blocks to the home of one of his friends and he will occasionally go out in the evening by himself to play cards with

his friends.

¶8 On bad days, generally following a seizure, Michael is virtually bedridden. He only gets up to eat and to use the bathroom. Even on Michael's good days, Mary, Michael's wife, fixes many of his meals, washes his clothes and makes sure he takes his medicine. Michael developed diabetes in April 1997, and Mary must also make sure that Michael monitors his blood sugar.

¶9 The State Compensation Insurance Fund (State Fund), acting as Security Armored Express's insurer, accepted liability for Michael's injuries and paid medical and wage loss benefits. Michael also requested payment for domiciliary care provided by Mary, but the State Fund denied payment of those benefits. Consequently, Michael filed a petition in the Workers' Compensation Court requesting retroactive and ongoing domiciliary care benefits at a rate of compensation greater than allowed by § 39-71-1107, MCA (1995), the statute governing payment of those benefits. This statute provides:

> **Domiciliary care -- requirements -- evaluation.** (1) Reasonable domiciliary care must be provided by the insurer:
>
> a) from the date the insurer knows of the employee's need for home medical services that results from an industrial injury;
>
> (b) when the preponderance of credible medical evidence demonstrates that nursing care is necessary as a result of the accident and describes with a reasonable degree of particularity the nature and extent of duties to be performed;
>
> (c) when the services are performed under the direction of the treating physician who, following a nursing analysis, prescribes the care on a form provided by the department;
>
> (d) when the services rendered are of the type beyond the scope of normal household duties; and
>
> (e) when subject to subsections (3) and (4), there is a means to determine with reasonable certainty the value of the services performed.
>
> (2) When a worker suffers from a condition that requires domiciliary care, which results from the accident, and requires nursing care as provided for in Title 37, chapter 8, a licensed nurse shall provide the services.
>
> (3) When a worker suffers from a condition that requires 24-hour care and that results from the accident but that requires domiciliary care other than as provided in Title 37, chapter 8, the care may be provided by a family member. The insurer's responsibility for reimbursement for the care is limited to no more than the daily statewide average medicaid reimbursement rate for the current fiscal year for care in a nursing home. The insurer is not responsible for respite care.

(4) Domiciliary care by a family member that is necessary for a period of less than 24 hours a day may not exceed the prevailing hourly wage, and the insurer is not liable for more than 8 hours of care per day.

¶10 On the second day of trial, the parties reached a settlement wherein they agreed that Mary would be paid for providing domiciliary care for Michael. The agreement called for payment at the maximum rate permitted by § 39-71-1107(3), MCA (1995). This rate was determined to be $80.15 per day for fiscal year 1995; $82.64 per day for fiscal year 1996; $85.62 per day for fiscal year 1997; and $87.76 per day for fiscal year 1998.

¶11 On May 15, 1998, the parties reduced their agreement to a written stipulation for judgment and, on May 28, 1998, judgment was entered pursuant to that stipulation. Michael reserved his right to challenge the constitutionality of § 39-71-1107(3) and (4), MCA (1995). The Montana Attorney General's Office was notified of the constitutional challenge, but filed a Notice of Intent Not to Intervene on March 27, 1998.

¶12 The Workers' Compensation Court subsequently found § 39-71-1107, MCA, to be constitutional. The court also ruled that Michael did not have standing to challenge subsection (4) of the statute because he required 24-hour care and thus was not affected by that subsection. This appeal followed.

## Standard of Review

¶13 Resolution of this issue involves a question of constitutional law. The standard for reviewing conclusions of law is whether they are correct. *Henry v. State Compensation Ins. Fund*, 1999 MT 126, ¶ 10, 294 Mont. 449, ¶ 10, 982 P.2d 456, ¶ 10 (citing *State v. Butler*, 1999 MT 70, ¶ 7, 294 Mont. 17, ¶ 7, 977 P.2d 1000, ¶ 7).

> The constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be presumed, unless its unconstitutionality appears beyond a reasonable doubt. The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action which will not be declared invalid unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt.

*Stratemeyer v. Lincoln County* (1993), 259 Mont. 147, 150, 855 P.2d 506, 508-09, *cert. denied*, 510 U.S. 1011, 114 S.Ct. 600, 126 L.Ed.2d 566 (1993) (citing *Fallon County v. State* (1988), 231 Mont. 443, 445-46, 753 P.2d 338, 339-40). *See also State v. Lilburn* (1994), 265 Mont. 258, 262, 875 P.2d 1036, 1039, *cert. denied*, 513 U.S. 1078, 115 S.Ct. 726, 130 L.Ed.2d 630 (1995). Every possible presumption must be indulged in favor of the constitutionality of a legislative act. *Davis v. Union Pacific R. Co.* (1997), 282 Mont. 233, 240, 937 P.2d 27, 31 (citing *State v. Safeway Stores, Inc.* (1938), 106 Mont. 182, 199, 76 P.2d 81, 84). The party challenging a statute bears the burden of proving that it is unconstitutional beyond a

reasonable doubt and, if any doubt exists, it must be resolved in favor of the statute. *Grooms v. Ponderosa Inn* (1997), 283 Mont. 459, 467, 942 P.2d 699, 703 (citing *Heisler v. Hines Motor Co.* (1997), 282 Mont. 270, 279, 937 P.2d 45, 50).

## Discussion

¶14 *Whether the statutory cap on domiciliary care benefits as provided in § 39-71-1107 (3), MCA (1995), is unconstitutional.*

¶15 Michael challenges the constitutionality of § 39-71-1107(3), MCA, on two related grounds. First, he contends that the limitation on benefits for 24-hour care violates his right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Article II, section 4 of the Montana Constitution because, as a result of his choice to live at home rather than a skilled nursing facility, Mary is significantly under compensated for providing Michael's care. Second, he contends that the limitation on benefits is arbitrary and capricious thereby violating his right to substantive due process under the Fourteenth Amendment to the United States Constitution and Article II, section 17 of the Montana Constitution.

### A. Equal Protection

¶16 Both the Fourteenth Amendment to the United States Constitution and Article II, section 4 of the Montana Constitution provide that no person shall be denied the equal protection of the laws. Indeed, the principal purpose of Montana's Equal Protection Clause is to ensure that Montana's citizens are not subject to arbitrary and discriminatory state action. *Davis*, 282 Mont. at 240, 937 P.2d at 31 (citing *Godfrey v. Mont. State Fish & Game Com'n* (1981), 193 Mont. 304, 306, 631 P.2d 1265, 1267). And, "[n] otwithstanding the deference that must be given to the Legislature when it enacts a law, it is the express function and duty of this Court to ensure that all Montanans are afforded equal protection under the law." *Davis*, 282 Mont. at 240, 937 P.2d at 31.

¶17 We review equal protection challenges to legislation under one of three recognized levels of scrutiny. First, where the legislation at issue infringes upon a fundamental right or discriminates against a suspect class, such as race or national origin, we apply strict scrutiny, the most stringent standard of review. Strict scrutiny requires the government to show a compelling state interest for its action. *See Henry*, ¶ 29; *State v. Renee*, 1999 MT 135, ¶ 23, 294 Mont. 527, ¶ 23, 983 P.2d 893, ¶ 23; *Davis*, 282 Mont. at 241, 937 P.2d at

31.

¶18 Second, where the right in question has its origin in the Montana Constitution, but is not found in the Declaration of Rights, we employ a middle-tier scrutiny. Middle-tier scrutiny requires the State to demonstrate that its classification is reasonable and that its interest in the classification is greater than that of the individual's interest in the right infringed. *See Henry*, ¶ 30; *Renee*, ¶ 23; *Davis*, 282 Mont. at 241, 937 P.2d at 31-32.

¶19 And, finally, where the right at issue is neither fundamental nor warrants middle-tier scrutiny, we review the challenge under a rational basis test. This test requires the government to show that the objective of the statute was legitimate and bears a rational relationship to the classification used by the Legislature. *See Henry*, ¶ 33; *Renee*, ¶ 23; *Davis*, 282 Mont. at 241-42, 937 P.2d at 32.

¶20 Michael argues that the limitations codified in § 39-71-1107(3), MCA, legislatively compromise his fundamental and inalienable rights of privacy and liberty by specifically infringing on his choice to reside at home. He maintains that the effect of this statutory limitation is to force him to choose between being placed into a nursing home or having Mary assist him for compensation of what he claims amounts to only $3.65 per hour. Michael also argues that since the statute excludes respite care, Mary has no breaks from care and, if she does take a break in care and has to compensate someone else for the time spent caring for Michael, Mary has to pay that person more per hour than she herself is being paid.

¶21 While the rights to privacy and liberty are fundamental rights which require a strict scrutiny analysis, *see Gryczan v. State* (1997), 283 Mont. 433, 448-49, 942 P.2d 112, 121-22, what is at issue in this case is Michael's entitlement to certain legislatively created benefits. We have stated:

> [T]he right to receive Workers' Compensation benefits is not a fundamental right which would trigger a strict scrutiny analysis of equal protection. Nor does this statute infringe upon the rights of a suspect class.
>
> When a right determined to be less than fundamental is infringed upon by classification, the test applied by this Court is the rational relationship test. That is, does a legitimate governmental objective bear some identifiable rational relationship to a discriminatory classification. [Emphasis added.]

*Stratemeyer*, 259 Mont. at 151, 855 P.2d at 509 (citing *Cottrill v. Cottrill Sodding Service* (1987), 229 Mont. 40, 42-43, 744 P.2d 895, 897). *See also Henry*, ¶ 29; *Heisler*, 282 Mont. at 279, 937 P.2d at 50.

¶22 Moreover, the first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal

manner. *Renee*, ¶ 27 (citing *In re S.L.M.* (1997), 287 Mont. 23, 32, 951 P.2d 1365, 1371). The equal protection clause does not preclude different treatment of different groups or classes of people so long as all persons within a group or class are treated the same. Consequently, when addressing an equal protection challenge, this Court must first identify the classes involved and determine whether they are similarly situated. *Henry*, ¶ 27 (citing *S.L.M.*, 287 Mont. at 32, 951 P.2d at 1371). If the classes at issue are not similarly situated, then the first criteria for proving an equal protection violation is not met and we need look no further.

¶23 Michael argues that there is but a single class consisting of all workers' compensation claimants subject to the restriction. We disagree. As the Workers' Compensation Court pointed out, there are two classes created by § 39-71-1107, MCA; family member caregivers who are subject to the limitation on compensation and non-family member caregivers who are not subject to the limitation on compensation.

¶24 While the care provided by the family member may in some respects be identical to the care provided by a non-family member, it also differs in some important respects. The family member who typically provides care to the claimant is the claimant's spouse who resided with the claimant in the family home prior to the accident. Some of the care needed by the claimant, such as meal preparation, shopping, and cleaning, may have already been provided by the family member prior to the accident. In addition, some of the care provided may be passive supervision which would not preclude the caregiver from carrying on many normal activities during the day or night. It is in this setting that the family member caregiver, unlike a non-family member caregiver, eats, sleeps, fraternizes with family and friends, pursues hobbies, and relaxes. Moreover, family member caregivers provide care on a skill level much lower than that provided by non-family member caregivers in professional licensed nursing facilities.

¶25 The non-family member caregiver, on the other hand, provides care as a full-time job, works away from home, and has the sole task of caring for and watching over claimants. Unlike the family member caregiver, the non-family member caregiver cannot pursue other activities while caring for claimants.

¶26 These differences justify treating the family member caregiver differently from the non-family member caregiver and for limiting payment to the family member caregiver. Consequently, it is not necessary for us to determine which level of scrutiny, the strict standard as Michael alleges should apply or the rational basis standard as is generally

applied to Workers' Compensation cases, or whether § 39-71-1107(3), MCA, would pass muster under either standard. Michael's challenge to the statute must fail because family member caregivers and non-family member caregivers are not similarly situated for purposes of equal protection.

¶27 Accordingly, we uphold the determination of the Workers' Compensation Court that the payment limitation set forth in § 39-71-1107(3), MCA (1995), does not violate the Equal Protection Clause of the United States or Montana Constitutions.

### B. Substantive Due Process

¶28 Both the Fourteenth Amendment to the United States Constitution and Article II, section 17 of the Montana Constitution provide that no person shall be deprived of life, liberty, or property without due process of law.

> The theory underlying substantive due process reaffirms the fundamental concept that the due process clause contains a substantive component which bars arbitrary governmental actions regardless of the procedures used to implement them, and serves as a check on oppressive governmental action. Even though a plaintiff may have no property or liberty interest grounded in state law which is protected from arbitrary government action, such action still may be subject to review under substantive due process. Substantive due process primarily examines the underlying substantive rights and remedies to determine whether restrictions . . . are unreasonable or arbitrary when balanced against the purpose of the legislature in enacting the statute.

*Newville v. State, Dept. of Family Services* (1994), 267 Mont. 237, 249, 883 P.2d 793, 800 (citing J. McGuinness and L. Parlagreco, *The Reemergence of Substantive Due Process As A Constitutional Tort: Theory, Proof, and Damages* (1990), 24 New Eng. L. Rev. 1129, 1133).

¶29 "Substantive due process analysis requires a test of the reasonableness of a statute in relation to the State's power to enact legislation." *Newville*, 267 Mont. at 250, 883 P.2d at 801 (quoting *Raisler v. Burlington N. R. Co.* (1985), 219 Mont. 254, 263, 717 P.2d 535, 541). Since the State cannot use its power to take unreasonable, arbitrary or capricious action against an individual, a statute enacted by the legislature must be reasonably related to a permissible legislative objective in order to satisfy guarantees of substantive

due process. *Newville*, 267 Mont. at 250, 883 P.2d at 801 (citing *Raisler*, 219 Mont. at 263, 717 P.2d at 541). *See also Ball v. Gee* (1990), 243 Mont. 406, 412, 795 P.2d 82, 86; *In re C.H.* (1984), 210 Mont. 184, 194, 683 P.2d 931, 936.

¶30 Michael argues that § 39-71-1107(3), MCA, violates the principles of substantive due process because it arbitrarily and unfairly balances cost containment with Michael's personal choice of who acts as his care provider. This Court has stated that cost containment alone cannot justify disparate treatment. *Heisler*, 282 Mont. at 283, 937 P.2d at 52. However, while cost containment is one of the justifications offered by the State Fund for treating family member caregivers differently than non-family member caregivers, it is not the only justification. As we pointed out in our discussion on equal protection, the differences in care provided by family member caregivers and non-family member caregivers offers sufficient justification for limiting compensation to family member caregivers. Consequently, we hold that § 39-71-1107(3), MCA, is not arbitrary or capricious and is "reasonably related to a permissible legislative objective." *See Newville*, 267 Mont. at 250, 883 P.2d at 801.

¶31 Accordingly, we uphold the determination of the Workers' Compensation Court that the payment limitation set forth in § 39-71-1107(3), MCA (1995), does not violate the Due Process Clause of the United States or Montana Constitutions.

¶32 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER