No. 04-124

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 362

ANN BUSTELL,

        Petitioner and Appellant,

    v.

AIG CLAIMS SERVICE, INC., and THE
INSURANCE COMPANY OF PENNSYLVANIA,

        Respondents and Respondents.


APPEAL FROM:    Workers' Compensation Court, State of Montana,
                    The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Paul E. Toennis, Graves & Toennis, P.C., Billings, Montana

        For Respondent:

                Donald R. Herndon, Herndon, Sweeney & Halverson, Billings, Montana


                Submitted on Briefs:  June 29, 2004

                        Decided:  December 21, 2004

Filed:


                       _____
                                  Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     Ann Bustell (Bustell) appeals from the judgment entered by the Workers' Compensation Court (WCC) granting attorney fees at an hourly rate pursuant to § 39-71-614, MCA, instead of the full contingency fee agreement amount between her and her attorney, Paul E. Toeniss (Toeniss).  We affirm.

¶2     We restate the issues on appeal as follows:

¶3     1.  Whether the WCC erred in holding the hourly attorney fee rule requirement of § 39-71-614, MCA (1999), passed constitutional scrutiny under substantive due process.

¶4     2.  Whether the WCC erred in holding the hourly attorney fee rule requirement of § 39-71-614, MCA (1999), passed constitutional scrutiny under equal protection.

¶5     3.  Whether the WCC erred when interpreting § 39-71-614, MCA (1999), to disallow an attorney fee to be based upon a contingency fee agreement existing between Bustell and Toennis.

## BACKGROUND

¶6     Bustell was injured in a trucking accident in Indiana on December 2, 1999, from which she was rendered a quadriplegic.  She filed a Montana workers' compensation claim arising out of that accident.  Respondents AIG Claims Service, Inc., and The Insurance Company of Pennsylvania (the Insurers), denied the claim on the ground it was not cognizable under the Montana Workers' Compensation Act (the Act).  Bustell hired Toeniss to represent her claim.  They entered into a written contingency fee arrangement, which would allow Toeniss to recover twenty-five percent of the post-judgment award. The matter proceeded to trial on April 23 through 25, 2001.

2

¶7 On May 15, 2002, the WCC entered judgment finding Bustell's claim to be compensable under the Act, the Insurers' denial of liability to be unreasonable and Bustell entitled to an award of attorney fees pursuant to § 39-71-611, MCA. The Insurers did not appeal. Subsequently, a dispute over the computation of attorney fees ensued and was heard by the WCC on May 13, 2003. Bustell moved that her attorney fee award should be based upon the contingency agreement she entered into with Toeniss. Instead, on November 14, 2003, the WCC entered judgment granting attorney fees in the amount of $66,794 (477 hours x $140/hour), pursuant to § 39-71-614, MCA, and Department of Labor and Industry (the Department) Regulations. Bustell appeals.

STANDARD OF REVIEW

¶8 The standard for reviewing conclusions of law is whether they are correct. *Powell v. State Compensation Insurance Fund*, 2000 MT 321, ¶ 13, 302 Mont. 518, ¶ 13, 15 P.3d 877, ¶ 13 (citations omitted). Every presumption must be indulged in favor of the constitutionality of the legislative act. *Powell*, ¶ 13 (citations omitted). A party challenging the constitutionality of a statute bears the burden of proving the statute unconstitutional beyond a reasonable doubt. *Henry v. State Compensation Insurance Fund*, 1999 MT 126, ¶ 11, 294 Mont. 449, ¶ 11, 982 P.2d 456, ¶ 11. Any doubts regarding constitutionality must be resolved in favor of the statute. *Powell*, ¶ 13.

¶9 This Court will not interfere with a determination of reasonable attorney's fees absent a showing that the WCC has abused its discretion. *Baeta v. Don Tripp Trucking* (1992), 254 Mont. 487, 491, 839 P.2d 566, 568-69 *overruled on other grounds by Kloepfer v. Lumbermens Mut. Cas. Co.* (1995), 272 Mont. 78, 899 P.2d 1081.

3

ISSUE ONE

¶10 Whether the WCC erred in holding the hourly attorney fee rule requirement of § 39-71-614, MCA (1999), passed constitutional scrutiny under substantive due process.

¶11 Both the Fourteenth Amendment to the United States Constitution and Article II, section 17, of the Montana Constitution provide that no person shall be deprived of life, liberty or property without due process of law. *Powell*, ¶ 28. "Substantive due process primarily examines the underlying substantive rights and remedies to determine whether restrictions . . . are unreasonable or arbitrary when balanced against the purpose of the legislature in enacting the statute." *Powell*, ¶ 28 (citations omitted). The WCC, while not specifically analyzing the constitutionality of § 39-71-614, MCA, did conclude it passes constitutional scrutiny. We agree.

¶12 Section 39-71-611, MCA, requires costs and attorney fees to be paid when, as here, a claim is first denied and is later found compensable. It states in pertinent part:

> (1) The insurer shall pay reasonable costs and attorney fees as established by the workers' compensation court if:
>
> . . . .
>
> (c) in the case of attorney fees, the workers' compensation court determines that the insurer's actions in denying liability or terminating benefits were unreasonable.

Once it is determined the insurer's actions were unreasonable, the WCC then calculates those fees pursuant to § 39-71-614, MCA, which states:

> (1) The amount of an attorney's fee assessed against an insurer under 39-71-611 . . . must be based exclusively on the time spent by the attorney in representing the claimant on the issues brought to hearing. The attorney must

4

document the time spent, but the judge is not bound by the documentation submitted.

(2) The judge shall determine a reasonable attorney fee and assess costs. The hourly rate applied to the time spent must be based on the attorney's customary and current hourly rate for legal work performed in this state, subject to a maximum established by the department.

(3) This section does not restrict a claimant and an attorney from entering into a contingency fee arrangement under which the attorney receives a percentage of the amount of compensation payments received by the claimant because of the efforts of the attorney. However, an amount equal to any fee and costs assessed against an insurer under 39-71-611 . . . and this section must be deducted from the fee an attorney is entitled to from the claimant under a contingency fee arrangement.

¶13   Section 39-71-614, MCA, was enacted in 1985 as a direct response to our holding in

*Wight v. Hughes Livestock, Co.* (1983), 204 Mont. 98, 664 P.2d 303 *superseded by statute*

*as stated in Baeta overruled on other grounds by Kloepfer*, which created a strong

presumption in favor of the reasonableness of a contingent fee contract. Section 39-71-614,

MCA, was intended to eliminate any question that the basis for determining the fee would

be an hourly fee, for which the judge has discretion in determining what is reasonable.

*Baeta*, 254 Mont. at 491-92, 839 P.2d at 569 *overruled on other grounds by Kloepfer*.

¶14   Bustell argues the hourly attorney fee rule requirement of § 39-71-614, MCA, is

unconstitutional because it violates substantive due process in that it fails to protect

claimants' net benefits, particularly those who have entered into a contingency fee

arrangement with their attorney. Bustell argues it is not reasonable that the Insurers, whom

the WCC found to have acted with "callous disregard" and to have partaken in "abhorrent

behavior," can now use § 39-71-614, MCA, to reward their bad act by limiting her net

benefit, making her unable to recoup her true costs and shifting the burden of paying full

attorney fees to her instead of the Insurers. As such, Bustell maintains, this statutory scheme violates substantive due process because it is not rationally related to a legitimate government interest.

¶15 The Insurers assert Bustell has not sustained her burden of overcoming the presumption of the constitutionality of § 39-71-614, MCA. The Insurers argue that the question in this matter is whether it is unreasonable for the Legislature to impose an hourly rate for attorney fees based on findings of § 39-71-611, MCA, in lieu of a dollar-for-dollar contingent attorney fee replacement for the claimant. The Insurers contend Bustell's claim that the statute is unconstitutional because it is unfair, unreasonable, capricious and arbitrary to assess an attorney fee which is not equal to her contingency fee does not have merit.

¶16 Indeed, it is Bustell's argument that the statutory scheme is unreasonable and unfair. However, as the Insurers point out, no authority has been cited for this proposition other than Bustell's belief it was improper for the Legislature to change the holding in *Wight* by enacting § 39-71-614, MCA. As such, we hold Bustell did not meet her burden of overcoming the presumption of the constitutionality of the statute. Therefore the WCC did not err in determining the statute does not violate the Due Process Clause of the United States or Montana Constitutions.

ISSUE TWO

¶17 Whether the WCC erred in holding the hourly attorney fee rule requirement of § 39-71-614, MCA (1999), passed constitutional scrutiny under equal protection.

¶18 Bustell further asserts § 39-71-614, MCA, is unconstitutional in that it violates equal protection because it prevents her from seeking her reasonable attorney fees as compared to

6

other similarly situated claimants. Bustell maintains the statute violates equal protection because it limits only severely injured claimants, whose benefits have been denied wrongfully, from receiving their full fees while providing that same fee recoupment to other less economically damaged claimants. The Insurers assert Bustell has not overcome the presumption of the constitutionality of § 39-71-614, MCA, for equal protection purposes. The WCC, while not specifically analyzing the constitutionality of § 39-71-614, MCA, did conclude it passes constitutional scrutiny. We agree.

¶19 Both the Fourteenth Amendment to the United States Constitution and Article II, section 4, of the Montana Constitution provide that no person shall be denied the equal protection of the laws. *Powell*, ¶ 16. The principal purpose of Montana's Equal Protection Clause is to ensure that Montana's citizens are not subject to arbitrary and discriminatory state action. *Powell*, ¶ 16. When analyzing workers' compensation statutes, we use the rational basis test because the right to receive Workers' Compensation benefits is not a fundamental right nor does the Act infringe upon the rights of a suspect class. *Henry*, ¶ 29. Under the rational basis test, the question becomes whether a legitimate governmental objective bears some identifiable rational relationship to a discriminatory classification. *Powell*, ¶ 21 (citations omitted). In creating a right to seek attorney fees, the Legislature cannot deny that right in significant part to one group while granting the right in total to others without a rational basis. *See Henry*, ¶ 29.

¶20 Proper equal protection analysis involves identifying the classes involved, determining whether they are similarly situated and then using the appropriate level of scrutiny to determine if the statute is constitutional. *Henry*, ¶¶ 7-29. Therefore, the first

7

prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. *Powell*, ¶ 22. Consequently, when addressing this type of challenge, we must first identify the classes involved and determine if they are similarly situated. *Powell*, ¶ 22.

¶21 Bustell claims her class is the "workers whose claims [of significantly large awards] have been denied unreasonably and who have suffered catastrophic injuries or diseases," and the other class is the "group of workers whose unreasonably denied benefits are significantly less." She maintains the larger the denied benefits are, the more likely the claimant is entitled to seek recoupment of full attorney fees, thereby creating two classes of claimants based on amount of award. In other words, although both "classes" are entitled to recoup their attorney fees under § 39-71-614, MCA, because of the insurer's unreasonableness in denying liability awards pursuant to § 39-71-611, MCA, those claimants who suffer more injury and are due to receive a larger award should be deemed a "class" subject to equal protection analysis.

¶22 We conclude these are not two legitimate classes for an equal protection challenge because every claimant under these statutes is treated equally. As Bustell herself points out, contingency fee contracts are allowed under § 39-71-614(3), MCA, however claimants get credit off the contractual fee for the hourly amount awarded. "An award of the full fees would not increase that contract fee but would merely prevent the reduction of benefits to claimants, and in some cases medical providers . . . ." Bustell is clearly within the class of persons awarded attorney fees pursuant to § 39-71-611, MCA, which are subject to

8

computation pursuant to § 39-71-614, MCA. However, any claimant who falls under this statutory scheme of awarding attorney fees is in her same class. The amount of those fees awarded is not relevant to any discriminatory treatment of the claimants themselves. Therefore, because there are not two separate classes of claimants, an equal protection analysis is not necessary. Accordingly, we hold the WCC correctly determined § 39-71-614, MCA, does not violate equal protection.

## ISSUE THREE

¶23 Whether the WCC erred when interpreting § 39-71-614, MCA (1999), to disallow an attorney fee to be based upon a contingency fee agreement existing between Bustell and Toennis.

¶24 Bustell argues even if § 39-71-611, MCA, is constitutional, she should still recoup the full contract fee in this case because it is the only reasonable outcome. At the root of this appeal is Bustell's repeated argument that it is "patently unfair to require [her] to pay the bulk of her attorney's fees and thereby create an economic benefit for the insurer, to her detriment" because "an award that is based on hourly rates for typical non-contingent fee cases will not even begin to compensate for the true attorney fee cost."

¶25 However, as we discussed above, the WCC correctly determined the reasonable attorney fees under the statutory scheme of § 39-71-611, MCA, and § 39-71-614, MCA. Instead of awarding the contingency fee, the WCC awarded fees based on hours worked by Toennis, pursuant to § 39-71-614(2), MCA, which requires payment at either the attorney's usual and customary hourly rate or a $75 per hour maximum established by the Department. Although Toeniss did not have a "usual and customary hourly rate" as he conducted all of

9

his business on a contingency basis, he submitted that for this matter, the hourly rate award should be $225. Concerning this rate, the WCC noted:

> [t]hat figure is not a rate he charges clients as all his work is on a contingent fee basis. Rather, it is the amount of his contingency earnings in 2001 divided by the number of hours he worked that year. That figure does not represent a "customary and current hourly rate for legal work performed in this state." It is also a volatile figure which could dramatically change year-to-year based on his recoveries for his clients. Most importantly, it exceeds the maximum amount prescribed by the Department of Labor and Industry (Department).

¶26 The WCC also noted that in addition, the Department's Rule 24.29.3802, A.R.M. (Rule), allowed it "[f]or good cause shown . . . [to] approve a variance providing for fees in excess of the guidelines . . . ." The Rule lays out ten factors an attorney has the burden of proving, through clear and convincing evidence, to demonstrate an entitlement to receive increased fees. The WCC analyzed Bustell's case under each of the ten factors and determined Toennis was entitled to receive a variance from the $75 maximum established by the Department to an increased fee of $140 per hour. In applying the factors, the WCC found:

> *(i) The anticipated time and labor required to perform the legal service properly.*
>
> This case involved an accident occurring in Indiana, a jurisdictional dispute, and a significant dispute over employment status. Out-of-state depositions were required. As shown by the actual hours Toennis worked, the case required more time and effort than many other workers' compensation cases. Assuming Toennis had six billable hours a day and worked 2080 hours a year, the time spent on this case amounted to nearly one-third of a billable year. That in turn amounts to a significant part of his practice which is even more significant given the risk of no recovery. This fact favors Toennis' request for an increase in the hourly rate.
>
> *(ii) The novelty and difficulty of legal issues involved in the matter.*
>
> The issues were both novel and difficult. Initially, there was a jurisdictional

dispute, a dispute which was complicated by the insurer's initial indication that Montana was the proper jurisdiction for the claim and its later repudiation of that indication and its insistence that Indiana had jurisdiction. There was also a significant dispute over employment status, a dispute complicated by the particular facts and circumstances of this case and the nature of the interstate trucking industry. This fact favors Toennis' request for an increase in the hourly rate.

*(iii) The fees customarily charged for similar legal services.*

Testimony by the insurers' expert attorney witness established that the usual and customary fee in Billings for workers' compensation litigation is between $125 and $150 an hour. The testifying attorney (Geoffrey R. Keller), like Toennis, has extensive experience and expertise in workers' compensation matters and typically charges $140 an hour. I find that $140 an hour is a reasonable fee for the work Toennis performed. This fact therefore favors Toennis' request for an increase in the hourly rate.

*(iv) The possible total recovery if successful.*

This case involves a relatively young quadriplegic. The potential total recovery over her lifetime is in the millions of dollars, encompassing not only compensation benefits but significant medical expenses and domiciliary care. Toennis estimates that benefits will be in the range of $6 million over the claimant's life. This factor favors Toennis' request for an increase in the hourly rate.

*(v) The time limitations imposed by the client or circumstances of the case.*

There were no unusual time limitations imposed in this case.

*(vi) The nature and length of the attorney-client relationship.*

The facts do not establish a long-term attorney-client relationship or a relationship that is unusual for a workers' compensation case.

*(vii) The experience, skill and reputation of the attorney.*

The facts, as well as my own experience with Toennis in litigated matters, establish that Toennis is highly skilled in workers' compensation matters. Indeed, his practice is almost exclusively devoted to workers' compensation. This factor favors Toennis' request for an increase in the hourly rate.

*(viii) The ability of the client to pay for the legal services rendered.*

11

Toennis' testimony established that claimant was financially unable to pay for his services on an hourly rate and that a contingent fee contract was necessary. Indeed, claimant was confronted not only with the necessity of securing and paying for counsel but with a total loss of income and catastrophic expenses for medical and domiciliary care. This factor favors Toennis' request for an increase in the hourly rate.

*(ix) The risk of no recovery.*

There was a significant risk of no recovery based on the jurisdictional and employment issues. Indeed, this case was vigorously defended by able counsel for the insurer. This factor favors Toennis' request for an increase in the hourly rate.

*(x) The market value of the lawyer's services at the time and place involved.*

Again, based on the testimony of Geoffrey R. Keller, I find that the market value of Toennis' services was $140 an hour. (*See factor (iii).*) This factor favors Toennis' request for an increase in the hourly rate.

¶27 Here, the WCC correctly followed established statutory and case law. The award *must* be based on the hourly rate of the attorney and the hours expended. Section 39-71-614(1), MCA; *Gullett v. Stanley Structures* (1986), 222 Mont. 365, 367, 722 P.2d 619, 621. Where a contingency fee arrangement exists, the WCC is to determine what would be a reasonable fee on a contingency basis. *See Davis v. Jones* (1987), 229 Mont. 158, 162, 745 P.2d 362, 364-65 (citations omitted). Further, the WCC is not bound by what the attorney puts forward and has much discretion when determining what is reasonable under the circumstances. *See Baeta*, 254 Mont. at 492, 839 P.2d at 569 *overruled on other grounds by Kloepfer*; Section 39-71-614(1), MCA. Further, while a claimant and an attorney may enter into a contingency fee arrangement, the amount assessed against the insurer under § 39-71-611, MCA, must be deducted from the fee an attorney is entitled to from the claimant under such contingency fee arrangement. Section 39-71-614(2).

12

¶28 While the maximum hourly fee is $75 under the Rule, a variance is allowed when an attorney's work meets the ten factor criteria established by the Department. The WCC, using its discretion, denied the contingency amount of $225 per hour put forward by Toennis and instead awarded a variance of $140 per hour. While this may not be the $225 per hour fee he was seeking, it is an amount that was determined correctly under the statutory scheme. As such, we conclude the WCC did not abuse its discretion in its award of attorney fees.

¶29 We affirm the WCC on all issues.

/S/ JIM REGNIER

We Concur:

/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE