DA 07-0206

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 29

DONALD WILKES,

      Petitioner and Appellant,

    v.

MONTANA STATE FUND,

      Respondent and Appellee.

APPEAL FROM:    Workers' Compensation Court, State of Montana
                  Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Daniel B. Bidegaray and Anna M. Bidegaray, Bidegaray Law Firm, Bozeman, Montana

      For Appellee:

            Daniel B. McGregor, Montana State Fund, Helena, Montana

Submitted on Briefs:  December 6, 2007

Decided:  February 5, 2008

Filed:

                                Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Donald Wilkes (Wilkes) appeals from an order of the Workers' Compensation Court (WCC), denying Wilkes's summary judgment motion and granting Montana State Fund's (State Fund) summary judgment motion. We affirm.

¶2 Wilkes presents the following issue for review:

¶3 Whether the WCC properly determined that the sole reliance on actual wage loss in § 39-71-703, MCA, in determining permanent partial disability (PPD) benefits does not violate Wilkes's constitutional right to equal protection.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4 Wilkes worked principally as a farmer. He operated his farm as a sole proprietorship. Wilkes elected not to be covered under a workers' compensation plan through his farm operation. Wilkes worked part-time as a school bus driver. Wilkes's employer maintained workers' compensation insurance through State Fund.

¶5 Wilkes suffered a serious injury in the course and scope of his employment as a school bus driver on March 26, 2002. He sustained a permanent neck injury. State Fund accepted liability and paid to Wilkes medical benefits and temporary total disability benefits. Wilkes's bus driving job constitutes light-duty labor. Wilkes returned to his part-time bus driving job when he achieved maximum medical improvement. He earns the same wage now as a bus driver that he earned before his injury. Wilkes's farming duties constitute heavy labor. Wilkes has not been able to resume farming since his injury, however, even after reaching maximum medical improvement. He has been forced to lease out his farming operation as a result.

2

¶6     State Fund determined that Wilkes was not eligible for PPD benefits after he achieved maximum medical improvement.  State Fund denied Wilkes's PPD benefits pursuant to § 39-71-703(5), MCA, in light of the fact that Wilkes had suffered no actual wage loss from his bus driving job.  Wilkes petitioned the WCC for a hearing to challenge the constitutionality of § 39-71-703, MCA.  Wilkes argued that § 39-71-703, MCA, violates the Equal Protection Clauses of the Montana Constitution and the U.S. Constitution.  He asserted that the statute impermissibly bases PPD benefits solely on actual wage loss instead of considering other relevant factors, such as age, education, and lifting restrictions.  The statute's PPD calculation, according to Wilkes, treats unequally similarly situated classes of workers.

¶7     Wilkes and State Fund filed cross-motions for summary judgment.  The WCC determined that § 39-71-703(5), MCA, properly distinguished workers with actual wage loss from workers without actual wage loss in awarding PPD benefits.  Wilkes appeals.

**STANDARD OF REVIEW**

¶8     The WCC based its decision on its interpretation of constitutional law.  We engage in plenary review of questions of constitutional law.  *Schmill v. Liberty Northwest Ins. Corp.*, 2003 MT 80, ¶ 9, 315 Mont. 51, ¶ 9, 67 P.3d 290, ¶ 9.  We review the WCC's conclusions of law for correctness.  *Reesor v. Montana State Fund*, 2004 MT 370, ¶ 6, 325 Mont. 1, ¶ 6, 103 P.3d 1019, ¶ 6.  We presume statutes to be constitutional.  The party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute is unconstitutional.  *Reesor*, ¶ 6.

**DISCUSSION**

3

¶9      *Whether the WCC properly determined that the sole reliance on actual wage loss in § 39-71-703, MCA, in determining PPD benefits does not violate Wilkes's constitutional right to equal protection.*

¶10     The Legislature previously calculated PPD benefits by considering the injured worker's age at the time of injury, the injured worker's education, and the injured worker's lifting restrictions. Section 39-71-703(a), (b), (d), MCA (1993). The injured worker's actual wage loss represented just one factor. Section 39-71-703(c), MCA (1993). The Legislature amended the statute in 1995, however, to eliminate the other factors. Mont. S. 375, 54th Leg, Reg. Sess. (March 24, 1995). The statute now grants a worker PPD benefits only if the worker can show actual wage loss. Section 39-71-703(1)(a), MCA.

¶11     Wilkes argues that the new statute violates his constitutional right to equal protection. Wilkes asserts that § 39-71-703(1)(a), MCA, creates two similarly situated classes of workers: (1) permanently partially disabled workers with actual wage loss who suffer reduced earning capacity; and (2) permanently partially disabled workers without actual wage loss who nevertheless suffer reduced earning capacity. Wilkes argues that denying PPD benefits to workers who suffer reduced earning capacity, but who do not suffer actual wage loss, impermissibly compensates similarly situated workers differently.

¶12     The U.S. Constitution and the Montana Constitution provide that no person shall be denied equal protection of the laws. U.S. Const. amend XIV; Mont. Const. art. II, § 4. Montana's equal protection clause ensures that "Montana's citizens are not subject to arbitrary and discriminatory state action." *Bustell v. AIG Claims Services, Inc.*, 2004 MT 362, ¶ 19, 324 Mont. 478, ¶ 19, 105 P.3d 286, ¶ 19. We address equal protection claims

4

concerning workers' compensation statutes using a two part analysis. We determine first whether the State has created a classification that treats differently two or more similarly situated groups. *Bustell*, ¶ 20. If the claim satisfies the first step, we next determine whether a legitimate governmental purpose rationally relates to the discriminatory classification. *Bustell*, ¶ 19.

¶13 The WCC relied principally on *Powell v. State Compensation Ins. Fund*, 2000 MT 321, 302 Mont. 518, 15 P.3d 877, to conclude that Wilkes had failed to demonstrate that § 39-71-703, MCA, created two similarly situated classes of workers. We considered in *Powell* whether § 39-71-1107, MCA, created a discriminatory classification by compensating injured workers' caregivers differently depending on whether the caregivers were in-home family members or were professional non-family members. *Powell*, ¶ 15. We identified two classes at issue in *Powell*: (1) "family member caregivers who are subject to the limitation on compensation," and (2) "non-family member caregivers who are not subject to the limitation on compensation." *Powell*, ¶ 23.

¶14 We noted that the care that a family member provides may be identical to the care a non-family member provides. We determined, however, that the classes were not similarly situated for several reasons. *Powell*, ¶ 24. The family member's care-giving duties included primarily tasks that the family member would have performed before the accident. The family member could provide "passive supervision" that would allow the caregiver to pursue other normal activities simultaneously. And the family member caregiver generally possessed a lower skill level than the professional. *Powell*, ¶ 24. We deemed these differences to be more important than any similarities between the classes. *Powell*, ¶ 24.

5

¶15 The WCC analogized *Powell* to Wilkes's case. The WCC noted the numerous attributes that the two classes at issue in this case share. Members of the two classes have suffered work-related injuries, have reached maximum medical improvement, have permanent physical impairment, have suffered lost earning capacity, and rely on § 39-71-703, MCA, as their exclusive remedy. Actual wage loss constitutes the single distinction between the classes. The WCC noted, however, the Legislature's declaration of public policy for the Workers' Compensation Act, in which it declared that "the wage-loss benefit should bear a reasonable relationship to actual wages lost as a result of work-related injury or disease." Section 39-71-105(1), MCA. The WCC determined that actual wage loss constituted "a fundamental distinction, in light of the Legislature's express public policy that wage loss benefits should bear a reasonable relationship to actual wages lost."

¶16 Wilkes advances several arguments to support his contention that the WCC incorrectly determined that the two classes were dissimilar. Wilkes first contends that *Powell* does not support the WCC's conclusion. Wilkes argues that the *Powell* classes contained more significant differences than the single distinction at issue here – actual wage loss. Wilkes asserts that *Reesor* and *Snetsinger v. Montana University System*, 2004 MT 390, 325 Mont. 148, 104 P.3d 445, constitute better authority.

¶17 We considered in *Reesor* whether a statute violated claimants' equal protection rights by providing for the termination of PPD benefits upon the claimant reaching the age at which the claimant became eligible for social security. *Reesor*, ¶ 7. We determined that the statute created two largely identical classes: "(1) PPD eligible claimants who receive or are eligible to receive social security retirement benefits; and (2) PPD claimants who do not receive and

6

are not eligible to receive social security retirement benefits." *Reesor*, ¶ 10. Age constituted the only identifiable distinguishing factor between the two classes. *Reesor*, ¶ 12. We deemed the claimant's age to be unrelated to the claimant's ability to engage in meaningful employment. We concluded that the classes were similarly situated, and we proceeded with the equal protection analysis. *Reesor*, ¶ 12.

¶18 We considered in *Snetsinger* whether the Montana University System's policy that barred same-sex domestic partners from receiving insurance coverage violated employees' equal protection rights. *Snetsinger*, ¶ 12. The district court determined that the policy created two dissimilar classes, distinguished by the fact that only one class had dependents, defined as certain children and spouses under the University's policy. *Snetsinger*, ¶ 20. We rejected as illusory the district court's distinction. *Snetsinger*, ¶ 27. The University's definition of "spouse" included unmarried opposite-sex partners who had signed an "Affidavit of Common Law Marriage." *Snetsinger*, ¶ 22. Montana law does not support this definition of spouse. *Snetsinger*, ¶¶ 22-23. We concluded that the two classes were similarly situated absent a valid legal definition of spouse supporting the marital status of unmarried opposite-sex partners but not unmarried same-sex partners. *Snetsinger*, ¶ 27.

¶19 *Reesor* and *Snetsinger* do not support Wilkes's contention that § 39-71-703(1)(a), MCA, creates two similar classes. Wilkes contends that § 39-71-703(1)(a), MCA, like the statute in *Reesor*, creates two largely identical classes distinguished by a single factor – actual wages. Wilkes oversimplifies our analysis in *Reesor*. We did not determine in *Reesor* that the two classes were similarly situated merely because a single factor distinguished them. We determined that, age, the single factor at issue, was also "unrelated to a person's

7

ability to engage in meaningful employment." *Reesor*, ¶ 12. In other words, we concluded that the two classes were similarly situated because age was irrelevant to the statute's underlying justification.

¶20 Here, however, we agree with the WCC that actual wage loss constitutes "a fundamental distinction . . . ." The WCC correctly noted the significance of the Legislature's express public policy that "the wage-loss benefit should bear a reasonable relationship to actual wages lost as a result of work-related injury or disease." Section 39-71-105(1). The distinguishing factor between the two classes, actual wage loss, plainly relates to the underlying justification of the statute.

¶21 Wilkes also contends that actual wage loss constitutes an illusory distinction in the same manner as the distinction in *Snetsinger*. Wilkes argues that PPD claimants are otherwise similarly situated with regard to benefits for age, education, and lifting restrictions because those factors independently establish reduced earning capacity. Wilkes asserts that actual wage loss constitutes an illusory distinction because it comprises just one factor in reducing an injured worker's earning capacity. Wilkes urges that age, education, and lifting restrictions should not be conflated with actual wage loss in order to deny PPD benefits.

¶22 Wilkes's definition of an illusory distinction does not follow our decision in *Snetsinger*. We concluded in *Snetsinger* that marital status was an illusory distinction because it included a definition of spouse not supported by Montana law. The policy's definition of spouse represented an invalid justification for denying unmarried same-sex couples insurance benefits while allowing them to unmarried opposite-sex couples. *Snetsinger*, ¶¶ 22-23, 27. Montana law, by contrast, clearly supports the use of actual wage

8

loss as the primary factor in awarding PPD benefits. Sections 39-71-703 and 39-71-105, MCA.

¶23    Wilkes suggests that the primary factor in awarding PPD benefits *should be* reduced earning capacity as demonstrated by age, education, and lifting restrictions. Although attractive, Wilkes cannot demonstrate any valid authority to support this contention. Wilkes refers instead to a repealed version of the workers' compensation statute for support. Age, education, and lifting restrictions constituted factors to determine PPD benefits pursuant to the pre-1995 version of § 39-71-703, MCA (1993). The Legislature amended § 39-71-703, MCA, to exclude those factors in 1995. Mont. S. 375, 54th Leg., Reg. Sess. (March 24, 1995). Actual wage loss represents the primary factor for determining PPD benefits under the amended statute. Section 39-71-703(1)(a), MCA.

¶24    Wilkes also supports his contention that PPD benefits compensate for reduced earning capacity by citing decisions of this Court that interpreted pre-1995 formulations of workers' compensation law. *E.g. Hale v. Royal Logging*, 1999 MT 302, 297 Mont. 165, 990 P.2d 1245; *Chagnon v. Telleman Motor Co.*, 259 Mont. 21, 855 P.2d 1002 (1993); *Shaffer v. Midland Empire Packing Co.*, 127 Mont. 211, 259 P.2d 340 (1953); *Meznarich v. Republic Coal Co.*, 101 Mont. 78, 53 P.2d 82 (1935). Wilkes can point to no authority interpreting the amended version of § 39-71-703, MCA, however, that provides that PPD benefits should be determined on the basis of the claimant's reduced earning capacity.

¶25    We do not dispute that Wilkes's claims may be valid under pre-1995 statutory and decisional law, but the Legislature's 1995 amendments to § 39-71-703, MCA, have rendered those claims baseless. We agree with the WCC that our reasoning in *Powell* controls. We

9

determined in *Powell* that the differences between the two classes at issue were more important than the similarities. *Powell*, ¶ 24. We held that the equal protection challenge in *Powell* failed because the two classes were not similarly situated. *Powell*, ¶ 26. Wilkes correctly asserts several important similarities exist between the two classes in this case. Both classes have suffered work related injuries. Both have reached maximum medical improvement. Both have physical impairment. Both have suffered lost earning capacity. And both rely on § 39-71-703, MCA, as their exclusive remedy.

¶26 A single difference exists, however, in the form of actual wage loss. The WCC correctly concluded that this difference was fundamental, in light of the Legislature's declaration that "the wage-loss benefit should bear a reasonable relationship to actual wages lost as a result of work-related injury or disease." Section 39-70-105(1), MCA. Actual wage loss sufficiently distinguishes the two putative classes.

¶27 Wilkes also advances a thoughtful policy argument demonstrating that age, education, and lifting restrictions constitute more equitable factors to determine PPD benefits. Wilkes's policy argument, however, does not demonstrate that the two classes created by § 39-71-703, MCA, are similarly situated pursuant to Montana law.

¶28 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON

/S/ PATRICIA COTTER
/S/ JIM RICE