Justice Jim Rice, dissenting.
¶28 I would conclude the record is insufficiently developed at this ***365 stage of the litigation to support enjoinment of a statute that has been in effect without challenge for over 10 years, and constitutes the status quo in the matter. Indeed, the inadequacy of the record at this point in the proceeding is significant enough to raise the justiciability concern of ripeness. The undeveloped state of the law requires the Court, in order to affirm the injunction, to enter what is essentially a prospective declaratory judgment on the scope of practice of APRNs, without any guidance from the regulatory body qualified and authorized to make such medically-based judgments, which will inevitably taint that question, both before the Board of Nursing and before the District Court in this litigation.
¶29 The Court relies upon Armstrong , ¶¶ 2, 75, but the state of the record there stands in stark contrast to the record here. In that case, brought by a physician's assistant who had been performing abortions in Montana for more than 20 years, this Court enjoined a newly-passed law that restricted non-physicians from performing abortions. Armstrong , ¶¶ 22, 75. The Court relied on the fact that the Board of Medical Examiners had determined that the physician's assistant was competent to perform certain types of abortions. Armstrong , ¶ 63. In fact, the record showed that the physician assistant had been "performing abortions with the approval of the Montana Board of Medical Examiners since 1983." Armstrong , ¶ 64. The Court's decision was premised upon the fact that the health provider was "determined by the appropriate medical examining and licensing authority to be competent by reason of education, training or experience, to perform the particular medical procedure or category of procedures at issue[.]" Armstrong , ¶ 2, n.1 (emphasis added); see also Wiser , ¶ 15 (the privacy right is " 'to obtain a particular lawful medical procedure from a health care provider that has been determined by the medical community to be competent to provide that service and who has been licensed to do so' ") (quoting Armstrong , ¶ 62 ) (emphasis added).[1]
¶30 Here, the District Court issued its injunction upon hypothetical grounds. It first made an assessment about future regulatory actions, assuming that "the Board of Nursing will conclude ... APRNs may provide abortion care as within their scope of practice." (Emphasis ***366 added.) Then, it made assumptions about the Plaintiffs, concluding that, at some future point, they would complete the necessary training "to be competent to provide abortion services[.]" The court therefore reasoned there was "no harm in proactively applying a preliminary injunction to protect Weems from prosecution in the event she satisfies the competency requirements of the Board of Nursing and is operating within her scope of practice." (Emphasis added.) Thus, upon the assumptions that (1) the regulatory agency will conclude in the future that abortion services fall within the Plaintiffs' scope of practice, and (2) that Plaintiffs will complete necessary competency training, the statute has been "proactively" enjoined so that it will not be an obstacle "in the event" these assumptions come to pass. In my view, a more concrete injury must be demonstrated to justify a court's enjoinment of a longstanding statute. At this stage of the proceeding, *15 the alleged injury "is too contingent or remote to support present adjudication[.]" Reichert , ¶ 55.[2]
¶31 The tentativeness in the District Court's order is a consequence of the weaknesses in the proof offered so far in the proceedings by the Plaintiffs. Although the Court credits the Plaintiffs' "evidence," this consisted of three untested affidavits-one from Weems herself, and two from doctors who perform abortions. No testimony has been tested by the Rules of Evidence and cross examination. None of the affidavits aver that the Montana Board of Nursing has determined that abortions can currently be provided by the Plaintiffs pursuant to their current licensure, or that the Board intends to approve of the procedures under those licenses. Nor did Plaintiffs provide any regulatory statement from the Montana Board of Nursing regarding these issues, which the Court recognizes: "[t]he record has not been developed regarding the Board of Nursing's position, if any, on the regulatory limits of APRN
***367 practice when it comes to aspiration abortion." Opinion, ¶ 23.[3] Indeed, the ongoing uncertainty of this legal issue is underscored by the District Court's acknowledgement of the possibility that Weems could provide abortion services outside of APRN scope of practice, which would then subject her to "discipline from the regulatory board charged with overseeing APRNs-the Montana Board of Nursing."
¶32 Rather than providing evidence from the Board of Nursing, one of Plaintiffs' main arguments is that APRNs can provide some types of abortions as safely and competently as doctors, and that prohibiting them from doing so violates equal protection and a woman's right to privacy and procreative autonomy in Mont. Const. art. II, § 10.[4] However, the determination of whether APRNs can safely and competently provide abortions is clearly a question for the Montana Board of Nursing, who govern the practice of APRNs in Montana, see §§ 37-8-102(1); -202(2)(b); -409(1), MCA, and have the requisite medical training and knowledge to make such a determination. In contrast, the court lacks both the authority and the proper medical knowledge and training to decide this issue. As the District Court correctly noted, "[a]uthority to set and enforce competency requirements for APRNs has been delegated by the legislature to the Board of Nursing." Thus, the Board of Nursing is the proper authority to determine whether APRNs may perform abortions in Montana.
*16 ¶33 The law governing this issue is as follows. The State of Montana has "police power by which it can regulate for the health and safety of its citizens." Wiser , ¶ 19 ; see also ***368 State v. Skurdal , 235 Mont. 291, 293-94, 767 P.2d 304, 306 (1988). Accordingly, in order to "safeguard life and health," a person practicing or offering to practice either professional nursing or practical nursing in Montana must "submit evidence that the person is qualified to practice and is licensed[.]" Section 37-8-101(1) - (2), MCA. In Montana, the licensing requirements, competency requirements, and scope of practice for nurses is determined by the Montana Board of Nursing. Sections 37-8-102(1); - 202(2)(b); -409(1), MCA. The general scope of practice for APRNs in Montana is governed by Mont. Admin. R. 24.159.1406. This regulation provides, in relevant part, that "[t]he APRN licensed in Montana may only practice in the role and population focus in which the APRN has current national certification[,]" and also provides a listing of general medical services that APRNs can provide. Whether this listing includes abortion services, and what kinds of abortion services, is clearly debatable.
¶34 Given that the Legislature has enacted specific legislation regarding abortion services, courts should not have to guess about whether licensure through the Board of Nursing authorizes the services, and it is incumbent upon the Plaintiffs to demonstrate that their practice has been legally restricted. Having yet failed to do so, the Plaintiffs are aided by the Court. Going beyond the District Court's conjecture that the Board of Nursing will conclude in the future that abortion services can be provided pursuant to their licensure, the Court concludes that Plaintiffs have "just[ified] their claim" of what the law is, simply on the basis of the "allegations" in their Complaint and affidavits. Opinion, ¶¶ 13, 23. Although the Court cites subsection (2) of § 27-19-201, MCA, as the basis for the preliminary injunction, that provision does not authorize enjoinment of a statute in prevention of "irreparable injury" before the parties establish as a matter of law that the challenged statute applies to them, or by merely "justify[ing] their claim." Opinion, ¶ 23. Preliminary injunctions are to be issued to "preserve the status quo and to minimize the harm to all parties pending full trial[.]" Yockey v. Kearns Props., LLC , 2005 MT 27, ¶ 18, 326 Mont. 28, 106 P.3d 1185 (citing Porter v. K & S Partnership , 192 Mont. 175, 183, 627 P.2d 836, 840 (1981) (emphasis in original)). Despite the Plaintiffs not yet establishing that abortion procedures are authorized by their licensure, the Court here overturns the status quo and enjoins longstanding, lawfully enacted legislation, which is entitled to a presumption of constitutionality.
¶35 It seems the Court has not considered that "[t]he constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be presumed, unless its unconstitutionality ***369 appears beyond a reasonable doubt. The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action ..." Powell v. State Compensation Ins. Fund , 2000 MT 321, ¶ 13, 302 Mont. 518, 15 P.3d 877 (citing Stratemeyer v. Lincoln County , 259 Mont. 147, 150, 855 P.2d 506, 508-09 (1993) ). "Every possible presumption must be indulged in favor of the constitutionality of a legislative act. ... The party challenging a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt and, if any doubt exists, it must be resolved in favor of the statute." Powell , ¶ 13 (emphasis added). I do not believe the showing made so far by the Plaintiffs is sufficient to support the relief they seek by preliminary injunction-enjoining a presumably constitutional statute.
¶36 In my view, the Court has effectively entered a declaratory judgment on a medical issue that should fall under the regulatory expertise of the Board of Nursing. See §§ 37-8-102(1); -202(2)(b); -409(1), MCA. Consequently, there is little need to further litigate an issue the Court has determined, upon minimal proceedings and record, to weigh in on. I believe the Court has done so by mischaracterizing the State's interest as broadly restricting "the rights of women patients to obtain the lawful medical procedure recognized in Armstrong [,]" Opinion, ¶ 26, when the interest the State seeks to protect is much narrower, that is, ensuring that the *17 proper regulatory authority affirmatively determines that individuals offering the medical procedures in question are both licensed and competent to provide that type of care in order to "safeguard life and health." Section 37-8-101, MCA.
¶37 I would reverse the entry of the preliminary injunction in favor of further proceedings.
Justice Laurie McKinnon and Justice James Jeremiah Shea join in the dissenting Opinion of Justice Rice.

Indeed, the Armstrong Court saw its decision as being about "who" should decide medical competencies, which it concluded should be determined "by the medical community in the exercise of its collective professional expertise and judgment, acting through the state's medical examining and licensing authorities, and after taking into consideration the education, training, experience and skills of the health care provider and the patient's health interests[.]" Armstrong , ¶ 15.

To support Plaintiffs' standing, the Court offers Gryczan , 283 Mont. at 443-46, 942 P.2d at 118-20, where we found that lesbian and gay plaintiffs had standing to challenge the constitutionality of a statute criminalizing same-sex sexual conduct, despite lack of prosecution, because the plaintiffs were "precisely the individuals against whom the statute is intended to operate." Opinion, ¶ 14. However, the statute there created a concrete injury because it clearly applied to the plaintiffs without any further determination or action by a court or regulatory authority. Conversely, the statute here does not, on its face, demonstrate a concrete injury because Plaintiffs have not yet established that they are able to perform abortions under their current licensure, an issue for the Montana Board of Nursing. See §§ 37-8-102(1); -202(2)(b); - 409(1), MCA. Thus, further action by the proper regulatory authority-the Montana Board of Nursing-is necessary here before it can be established that the statute creates a concrete injury.

For example, in contrast, rulemaking undertaken by the California Board of Registered Nursing on this issue explained:
In order to perform an abortion by aspiration techniques pursuant to Section 2253 and 2725.4 of the Business and Professions Code (Section 2725.4 ), a person with a license or certificate to practice as a nurse practitioner or a certified nurse-midwife shall complete training recognized by the Board. The proposed regulatory action will set forth parameters in order to comply with Section 2725.4.
Board of Registered Nursing Initial Statements of Reasons (Amended) 1, https://www.rn.ca.gov/pdfs/regulations/isor14635-a.pdf (last visited Apr. 3, 2019).

Similarly, Plaintiff Weems argues she can safely and competently distribute mifepristone and misoprostol, drugs used for medication abortions, because she has prescription authority from the Board of Nursing and a U.S. Drug Enforcement Authority (DEA) license. Weems attested that she could independently distribute mifepristone and misoprostol prior to moving to Montana, and that mifepristone and misoprostol are not controlled substances and carry less danger than controlled substances. However, these assertions are premised upon Weems' opinions. Instead, for purposes of litigation, they should be determined by the proper regulatory authority.