No. 88-374

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

MONTANA STOCKGROWERS ASSOCIATION,
JOSEPH F. "BUD" MAURER; and TOM
LORANG,

Plaintiffs and Respondents,

-vs-

THE STATE OF MONTANA, DEPARTMENT OF
REVENUE, and JOHN D. LaFAVER, DIRECTOR
OF THE DEPARTMENT OF REVENUE,

Defendants and Appellants.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Larry G. Schuster argued, Dept. of Revenue, Helena,
Montana

For Respondent:

Thomas E. Hattersley argued and Ronald Waterman argued;
Gough, Shanahan, Johnson and Waterman, Helena, Montana
John C. Hoyt; Hoyt & Blewett, Great Falls, Montana

Submitted: April 20, 1989

Decided: July 7, 1989

Filed:

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal concerns a judgment from the District Court of the Eighth Judicial District, Cascade County, declaring classification of livestock in property tax valuation unconstitutional in violation of equal protection guarantees in the United States and Montana Constitutions. The Department of Revenue (DOR) appeals this decision, and also appeals the District Court's interpretations of applicable statutes, its decision to take judicial notice of facts denied by the DOR in answer to requests for admissions from Respondent, the Montana Stockgrowers Association (MSA), and the remedy provided the MSA for the DOR's alleged improper assessment of taxes. We reverse the District Court's decision on the initial issues, and thus render the issue of the appropriate remedy moot.

## Issues

(1) Did the District Court err by concluding that the enactment of Senate Bill 47 and Senate Bill 283 denied MSA equal protection of the law?

(2) Did the District Court err by concluding that all livestock in Montana are business inventory?

(3) Did the District Court err by taking judicial notice of certain facts called for by the plaintiffs' requests for admission?

(4) Did the District Court err in its interpretation of Chapter 330 and Chapter 613 of the Laws of Montana 1981?

(5) Did the District Court err by fashioning a remedy which is beyond the scope of the Uniform Declaratory Judgments Act, and § 15-1-406, MCA?

2

In the lower court, MSA, three members of MSA, and three stock owners brought suit seeking a declaration that the classification of livestock separate from business inventory was invalid. Both parties moved for judgment on the pleadings. The District Court granted the motion made by MSA.

The legislature's enactment of laws affecting the rate of taxation for business inventory and livestock spawned the current litigation. In 1981, the legislature passed two bills which affected tax rates for livestock and business inventories. Senate Bill 47, entitled "AN ACT TO REMOVE LIVESTOCK, POULTRY, AND THE UNPROCESSED PRODUCTS OF BOTH FROM CLASS SEVEN AND PLACE THEM IN CLASS SIX FOR PURPOSES OF PROPERTY TAXATION; AND PROVIDING AN APPLICABILITY AND IMMEDIATE EFFECTIVE DATE; AMENDING SECTIONS 15-6-136 AND 15-6-137, MCA" appeared to mandate that livestock be valued with property defined as class six in the tax code, effective on approval. See I Laws of Montana, Chapter 330 (1981). SB 47, however, did not provide a directive to code compilers to actually amend § 15-6-136, MCA, so that livestock would be listed in the code books with class six property following its passage. Instead, and engendering some confusion, another bill also passed in 1981, accomplished the actual code amendment. Senate Bill 283, entitled "AN ACT TO EXEMPT BUSINESS INVENTORIES FROM TAXATION; PROVIDING TAX CREDITS FOR BUSINESS INVENTORY TAXES PAID PRIOR TO EXEMPTION; AMENDING SECTIONS 15-6-136, 15-6-202, 15-8-104, AND 15-24-301, MCA; AND REPEALING SECTIONS 15-24-402 AND 15-24-403, MCA; AND PROVIDING EFFECTIVE DATES" directed code compilers to amend the list of class six property contained in § 15-6-136, MCA, to include livestock. II Laws of Montana, Chapter 613 (1981). SB 283 also directed code compilers to delete business inventory from the list of class six property. The

3

effective date of this amendment, however, was January 1, 1983.

Following the 1981 Session, the DOR recognized that the effect of the passage of SB 283 and SB 47, while clearly spelling out treatment of livestock property for the tax year 1983 when SB 283 became effective, left the classification of livestock in limbo for the tax year 1982. The title of SB 47 indicated that livestock would no longer be taxed as class seven property effective on passage of SB 47 in 1981. However, the placement of livestock in class six (which provided a lower tax rate than class seven), was not effective until SB 283 became effective, that is, in 1983. To provide for classification in the interim, the DOR drafted ARM § 42-21-120 (1981) which proposed classifying livestock as class six property for the 1982 tax year. The DOR submitted this proposal to the Legislature's Revenue Oversight Committee. Thus, we are assured that at least the Committee scrutinized the DOR's interpretation of SB 43 and SB 283. However, the Committee did not specifically poll the legislature on the issue of whether livestock should be treated as class six property for the 1982 tax year. Following applicable procedures, the DOR adopted the rule and taxed livestock as class six property for the 1982 tax year. In 1983, code compilers specifically listed livestock as class six property. The legislature has not amended the statute to provide the same exemption for livestock which has been effective for business inventory since 1983.

I.

The District Court held that no distinction exists which would justify classification of livestock separate from business inventory. Therefore, according to the lower court, the classifications attempted by SB 47 and SB 283 violated

4

equal protection guarantees found in the Fourteenth Amendment to the United States Constitution, and in Article II, § 4 of the Montana Constitution. The lower court applied both the rational basis test and middle tier analysis to conclude that the classification at issue violated equal protection guarantees.

The DOR contends that the District Court erred because middle tier analysis does not apply, and a review of the history of livestock tax treatment demonstrates that livestock has always been reasonably classified as a distinct type of property. MSA responds that the District Court correctly concluded that no distinction exists between livestock and business inventory which would justify disparate tax treatment under state and federal equal protection guarantees.

Initially, we note that middle tier scrutiny does not apply in this case. The District Court's decision to apply middle tier analysis rests on its interpretation of Article XII, § 1 of the Montana Constitution, which reads:

> Section 1. Agriculture. (1) The legislature shall provide for a Department of Agriculture and enact laws and provide appropriations to protect, enhance, and develop all agriculture.

The lower court held that the interest in agriculture possessed by MSA resulting from the constitutional provision mandated middle tier scrutiny citing Butte Community Union v. Lewis (1986), 219 Mont. 426, 712 P.2d 1309. Butte Community Union held that the guarantee to the needy to receive state assistance as provided by Article XII, § 3(3) of the Montana Constitution, mandated middle tier scrutiny of classifications burdening certain individuals' interest in

5

obtaining welfare benefits. We disagree that Butte Community Union provides the rule for this case.

Article XII, § 1 requires the Legislature to "enact laws and provide appropriations to protect, enhance, and develop agriculture". We disagree Article XII, § 1, imparts to stock growers a constitutionally significant interest in tax classifications. The language provides a broad directive whose specifics are implemented through legislative decision, not by constitutional mandate. Thus, it is in no sense a self-executing provision which can be enforced by this Court. See generally 16 Am. Jur. 2d Constitutional Law § 143. Moreover, the power to exempt particular classes of properties is specifically enumerated under Article VIII, § 5 of the Montana Constitution. Reading this provision with the vague instruction to enact laws to benefit agriculture in Article XII, § 1, leads us to conclude that middle tier scrutiny is not required. Therefore, we reverse the District Court and hold the middle tier analysis inapplicable.

The proper test for the classification at issue here is the rational basis test. As explained by the United States Supreme Court, to survive scrutiny under the rational basis test, classifications must be reasonable, not arbitrary, and they must bear a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. Eisenstadt v. Baird (1972), 405 U.S. 438, 447, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349, 359. In applying this test the Court in Eisenstadt framed the inquiry as:

> whether there is some ground of difference that rationally explains the different treatment . . .

Eisenstadt, 438 U.S. at 447.

6

Decisions by this Court have explained and employed the rational basis test to determine whether various tax classifications pass equal protection muster:

"Equal protection of the law is seldom, if ever, obtained; and because of the very frailty of human agencies, the authorities all recognize the right of the legislative branch of government to make reasonable classifications of subjects, for property or occupation taxes * * * and if the classification is reasonable, and if all of the subjects within a given class are accorded the same treatment, the legislation cannot be said to deny to anyone within such class the equal protection of the law, even though the burden imposed upon him may be more onerous than that imposed upon a member of another class. [citing cases] But to justify such discriminatory legislation, and avoid the condemnation of the Fourteenth Amendment to the federal Constitution, the classification must be reasonable --that is, must be based upon substantial distinctions which really make one class different from another."

Peter Kiewit Sons' Co. v. State Board of Equalization (1973), 161 Mont. 140, 147, 505 P.2d 102, 106-07 (quoting State ex rel. Schulz-Lindsay v. Board of Equalization (1965), 145 Mont. 380, 403 P.2d 635; emphasis in original). An older case concerning tax classifications reflects the same judicial deference for legislative classifications of taxable property in analyzing equal protection guarantees:

A classification is not open to objection unless it precludes the assumption that the classification was made in the exercise of legislative judgment and discretion. [citation omitted].

Any classification is permissible which has a reasonable relation to some permitted end of governmental action. [citations omitted].

When there is a difference between various properties, it need not be great or conspicuous in

7

order to warrant classification. [citations omitted]. . . .

It makes no difference that the facts on which the classification is based may be disputed or their effect opposed by argument and opinions of serious strength. It is not within the province of the courts to arbitrate any such contrariety. [citation omitted].

Bank of Miles City v. Custer County (1933), 93 Mont. 291, 296-97, 19 P.2d 885, 887.

Under this authority, the issue here is whether there exists a distinction between business inventory and livestock sufficient to justify a classification which exempts business inventory from taxation while taxing livestock at 4% of its market value. The Colorado Supreme Court faced a similar question on different tax treatment for mobile homes and other residential property, and in disposing of the appeal, the Court explained the operation of the rational basis test in judicial inquiry over such distinctions:

[A]fter deciding that movable structures have been placed in a separate class for taxation, we need now only decide whether the legislature could have constitutionally treated and classified movable structures differently than conventional residences. . . . If the classification conceivably rests upon some reasonable considerations of difference or policy, there is no constitutional violation. The burden is therefore on the one attacking the classification to negative every conceivable basis which might support it, at least where no fundamental right is imperiled.

American Mobile Home Association, Inc. v. Dolan (Colo. 1976), 553 P.2d 758, 762 (emphasis added).

The record leaves no doubt that the burden MSA must bear has not been met. The State has affirmatively demonstrated not only conceivable bases for different treatment, the State

8

has answered MSA's contentions with actual policy reasons submitted to successive legislatures justifying different treatment of livestock and business inventory. For example, a study completed in 1966 for the Montana Legislative Council Subcommittee on Taxation pointed out certain problems in assessing business inventories, and outlined improvements for assessing livestock. The Study recommended an exemption for business inventories, but not for livestock. Other legislative materials also demonstrated differences in livestock and business inventory justifying disparate treatment. For example, one legislator contrasted the difference between breeding stock and business inventory pointing out that breeding stock is not property held for sale, rather, it is property held to produce products for sale. (Minutes of the Senate Taxation Committee, March 6, 1987.) Another legislator, arguing against a proposal which would have reduced rates on livestock in 1977, pointed out his constituency's reliance on livestock property to raise revenue for local government. (Minutes of the Senate Taxation Committee, April 6, 1977.) These legislative materials support finding that the legislature rationally decided livestock and business inventory should be treated differently for property tax purposes.

Furthermore, the legislature has always made a distinction between livestock and stocks of merchandise of all sorts, the classification which formerly covered business inventories. For example, in 1919 the legislature provided for Montana's first property tax classification system. Laws of Montana, Chapter 51 (1919). Livestock and merchandise of all sorts appear in the 1919 classification system in the same tax class, but are listed separately.

The separation of livestock and merchandise within the same class existed in Montana law until 1975. In 1975, the

9

legislature went further in distinguishing between these properties by placing them in separate tax classifications with different percentages of taxable value. See II Laws of Montana, Chapter 507 (1975). The legislature once again grouped livestock and business inventories in the same class in 1979, but maintained a separate listing in the code for the two types of properties. Section 15-6-136, MCA. Of course, finally, the separate treatment received by livestock and business inventories in 1981 created the current dispute. The history of separate treatment, and the legislative debates concerning the proper classification of business inventory and livestock, support the conclusion that the different tax treatment for the two types of property is justified.

Other conceivable differences between the two types of property also support this conclusion. For example, one could effectively contrast the distributions of livestock property as compared to placement of business inventories in Montana. Many counties have an abundance of livestock and little in the way of business inventories. These and doubtless other conceivable differences in use, productivity, and discoverability serve to justify the classification at issue here. Thus, the legislature acted rationally in classifying the two properties differently, and continuing the tax on livestock serves the legitimate state interest in raising revenue. We reverse the District Court and hold that the classification at issue passes muster under the applicable equal protection analysis.

II.

The District Court also erred in holding that livestock constitutes business inventory under § 15-6-202(5), MCA. Subsection (5) defines business inventory as:

10

> "Business inventories" includes goods primarily intended for sale and not for lease in the ordinary course of business and raw materials and work in progress with respect to such goods. Business inventories do not include goods leased or rented or mobile homes held by a dealer or distributor as part of his stock and trade.

Section 15-6-202(5), MCA. The District Court took judicial notice of the "fact" that livestock property by and large becomes goods destined for sale for food consumption, and thus concluded that livestock constituted business inventory under the subsection.

In construing statutory definitions according to the intent of the legislature, it is fundamental that the specific prevails over the general. Section 1-2-102, MCA. The intent of the legislature in inserting livestock as class six property through SB 283, and deleting business inventory through the same bill, obviously indicates that the two types of property are to receive separate treatment. In addition: § 15-1-101(i), MCA, specifically defines livestock; § 15-24-902, MCA, continues to provide an assessment methodology for taxing livestock; § 15-8-201, MCA, provides that livestock is subject to the general assessment date of the tax code; and § 15-8-706, MCA, maintains a reporting requirement for assessors of livestock. Construction of the definition of business inventory to include livestock would be to presume that these assessment statutes are superfluous. Such a construction is to be avoided. Section 1-2-101, MCA. Finally, even though business inventory, a class of property formerly denoted as "stocks of merchandise of all sorts", has at times been taxed at the same rate as livestock, it has always appeared in the tax code separately from livestock. We find nothing in the record demonstrates that the

11

legislature intended to depart from the historically separate treatment of the two properties. Thus, for all the reasons stated above on this issue, we reverse the District Court.

## III.

The District Court memorandum records its decision to take judicial notice of facts alleged by the MSA as follows:

### 1. Judicial Notice

The Defendant's [sic] denied certain requests for admissions stating the requests called for legal conclusion. The Plaintiff's [sic] request this Court take judicial notice of the matters denied by the Defendant's [sic].

Specific requests denied by the Defendant [sic] are as follows: (numeric references correspond to Plaintiffs' numeration)

1. a commercial enterprise which raises livestock intended for sale in the ordinary course of business constitutes a "business";

2. that livestock are things which are movable at the time of identification to a contract for sale;

3. that livestock constitute "personal property";

4. that "inventory" designates personal property held for sale in the ordinary course of business;

5. that livestock raised and intended for sale in the ordinary course of business constitute "inventory";

6. that livestock raised and intended for sale in the ordinary course of business constitute "business inventory."

The Defendant's [sic] denials of the above referenced requests for admissions were improper. The matters requested to be admitted are not subject to reasonable dispute. Those matters are "generally known within the territorial

jurisdiction" of this Court and are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Those are the standards governing judicial notice of facts. Rule 201, Montana Rules of Evidence. Therefore, this Court takes judicial notice of the above mentioned facts.

We have held on the prior issue that livestock is not included in the definition of business inventory for property tax classification. Thus, at least in the context relevant here, it is obvious that the District Court incorrectly noticed "facts" supporting a legal interpretation of two separate property classifications as one classification. This construction violates the rule that:

> [T]echnical words and phrases and such others as have acquired a peculiar and appropriate meaning in law . . . are to be construed according to such peculiar and appropriate meaning or definition.

Section 1-2-106, MCA. Here, the tax code supplies the definitions applicable for determining appropriate tax treatment of livestock and business inventory. We reverse the District Court's decision to take judicial notice of the terms in MSA's requests for admissions.


IV

The District Court ruled that the passage of SB 43 and SB 283 created an ambiguity in the proper classification of livestock which must be construed against the taxing authority. This conclusion is also erroneous and we hereby reverse on this issue.

The directive provided by passage of SB 283 that livestock be specifically included in § 15-6-136, MCA, supports the DOR's argument that no ambiguity exists in regard to tax treatment of livestock for the tax year 1983.

13

Since 1983, the legislature has not amended § 15-6-136 to exempt livestock from taxation. For the tax year 1982, the title of SB 43 demonstrates legislative intent to place livestock in class six effective as of the passage of SB 43. But more specifically, the effect of passage of both SB 43 and SB 283 was spelled out in a coordination instruction attached to SB 283:

> Section 5. Coordination instruction. Senate Bill 47, introduced in the 47th legislature, removes livestock, poultry, and the unprocessed products of both from class seven and places them in class six for purposes of property taxation. If Senate Bill 47 is passed and approved, then Section 1 of this act [SB 283] is to be replaced with the following section:
>
> Section 1. Section 15-6-136, MCA, is amended to read:
>
> 15-6-136. Class six property - description - taxable percentage. (1) Class six property includes:
>
> (a) livestock and poultry and the unprocessed products of both;

II Laws of Montana, Chapter 613 at p. 1404 (1981). The coordination instruction attached to SB 283, the same bill which provides the exemption for business inventory, conclusively demonstrates that livestock property was not included in the exemption provided for business inventory. Therefore, the District Court erred in concluding that the statute's treatment of livestock was ambiguous.

As noted in the facts surrounding this dispute, SB 283 was not effective until the 1983 tax year. Thus, as the District Court correctly pointed out, SB 283 provides no directive as to treatment of livestock for the tax year 1982. Nevertheless, the effect of SB 43 and SB 283 was sufficiently

14

unambiguous that the DOR drafted and passed a rule which was sent to the Revenue Oversight Committee governing treatment of livestock for the tax year 1982. Moreover, even if SB 47 and SB 283 were ambiguous as to the types of property included in the exemption for business inventory, such an ambiguity relative to exemptions is generally strictly construed against the taxpayer, not against the taxing authority. See Montana Bankers Association v. Department of Revenue (1978), 177 Mont. 112, 580 P.2d 909. Finally, as passage of the rule providing for class six treatment of livestock indicates, the delay in the actual code amendment was only a mistake in timing, not an ambiguity in tax treatment. Therefore, we hold that the passage of SB 47 and SB 283 properly classified livestock separately from business inventory, and we reverse the District Court on this issue.

V.

The last issue here concerns whether the District Court erred in deciding the appropriate remedy for the improper assessment of the MSA's property. Our decision that the DOR properly assessed the MSA's property moots this issue. Therefore, we reverse on all relevant issues and remand for proceedings in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_John Conway Harrison_

_William E Hunter_

_P.C. Gulbrandson_

Justices

16