No. OP 06-0232

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 293

LORI OBERSON, Legal Guardian for BRIAN MUSSELMAN,
an incapacitated person; KIMBERLEE MUSSELMAN,
individually and as the Natural Mother of DEVON MUSSELMAN,
a minor,

        Plaintiffs,

  v.

UNITED STATES DEPARTMENT OF AGRICULTURE,
FOREST SERVICE,

        Defendant.

ORIGINAL PROCEEDING: Certified Question, U.S. Court of Appeals Ninth Circuit
                      The Hon. William W. Schwarzer, Senior District Judge;
                      Hon. Ronald M. Gould and Hon. Marsha S. Berzon, Circuit Judges

COUNSEL OF RECORD:

        For Plaintiffs:

                Andrew D. Huppert (argued), Attorney at Law, Missoula, Montana
                Tom L. Lewis and J. David Slovak, Lewis, Slovak & Kovacich, Great
                Falls, Montana

        For Defendant:

                H. Thomas Byron, III (argued), U.S. Dept. of Justice, Civil Division,
                Washington, D.C.

                Peter D. Keisler, U.S. Dept. of Justice, Civil Division, Washington, D.C.

William W. Mercer, U.S. Attorney for the District of Montana, Billings, Montana

Victoria Laeder Francis, U.S. Attorney's Office, Billings, Montana


For Amicus Montana Fish, Wildlife & Parks:

Robert N. Lane, Chief Counsel, Fish, Wildlife & Parks, Helena, Montana


For Amicus Montana Trial Lawyers Association:

Michael G. Eiselein, Lynaugh, Fitzgerald, Eiselein & Grubbs, Billings, Montana
Lawrence A. Anderson, Attorney at Law, Great Falls, Montana


For Amicus Montana Defense Trial Lawyers Association:

Mikel L. Moore (argued), Christensen, Moore, Cockrell, Cummings & Axelberg, P.C., Kalispell, Montana


---

Argued:  April 20, 2007
Submitted:  May 1, 2007
Decided:  November 7, 2007


Filed:

---
Clerk

2

Justice Brian Morris delivered the Opinion of the Court.

¶1 Lori Oberson, as legal guardian for Brian Musselman (Musselman), and others, (collectively Oberson), brought an action in the United States District Court for the District of Montana under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, alleging that the United States Forest Service (Forest Service) negligently had failed to correct or warn of a dangerous condition on the snowmobile trail where Brian Musselman was injured. Oberson and the Forest Service cross-appealed to the United States Court of Appeals for the Ninth Circuit from the judgment of the District Court following a bench trial.

¶2 The Ninth Circuit certified three questions of law to this Court pursuant to Rule 44(c) of the Montana Rules of Appellate Procedure. We accepted the following three questions in our order dated April 5, 2006:

¶3 Does the gross negligence standard of care in the snowmobile liability statute, Mont. Code Ann. § 23-2-653 (1996), violate the Montana equal protection clause, Mont. Const. art. II, § 4?

¶4 If the snowmobile liability statute's gross negligence standard is unconstitutional, does the recreational use statute's willful or wanton misconduct standard of care, Mont. Code Ann. § 70-16-302(1) (1996), apply in its place?

¶5 If neither the snowmobile liability statute nor the recreational use statute provide an applicable standard of care, does the ordinary care standard, Mont. Code Ann. § 27-1-701, apply?

3

**FACTUAL AND PROCEDURAL HISTORY**

¶6     In February 1996 Musselman, Patrick Kalahar (Kalahar), Tim Johnson (Johnson), and Jamie Leinberger (Leinberger) were riding their snowmobiles at night on the Big Sky Trail, a trail maintained by the Forest Service on Forest Service land, outside West Yellowstone, Montana.  The group came upon a sudden, unmarked, steep decline in the trail.  Musselman reached the decline first and safely negotiated the hill, but stopped his snowmobile after Johnson had wrecked.  Musselman dismounted from his snowmobile and began to walk across the trail when Kalahar and Leinberger roared over the hill at approximately 55 mph.  One of their two snowmobiles struck Musselman in the head, causing him catastrophic brain injuries.

¶7     Oberson brought suit in federal court against the Forest Service under the FTCA.  She alleged that the Forest Service negligently had failed to correct or warn of the danger posed by the hill where Musselman was injured, and that its negligence was the proximate cause of Musselman's injuries.   The Forest Service filed a third-party complaint against Leinberger, Kalahar, and Johnson, alleging that their negligence had caused Musselman's injuries.  Kalahar settled and the court entered a default judgment against Johnson.  The case proceeded to trial against the Forest Service with Leinberger as the sole third-party defendant.

¶8     The Forest Service argued in pre-trial proceedings that it was immune to liability in light of the fact that its decision not to mark the hazardous hill was "discretionary" within the meaning of 28 U.S.C. § 2680(a).  It also argued that §§ 23-2-651, 653-54, MCA (1995) (the snowmobile liability statute), relieved it from a duty to warn of the

4

hazardous hill because "a snowmobile area operator has no duty to eliminate, alter, control, or lessen the risk inherent in the sport of snowmobiling," § 23-2-653(3), MCA. The court rejected both affirmative defenses. The court concluded with respect to the latter that the hill at issue was not one of the risks "inherent in the sport of snowmobiling."

¶9 The District Court looked next to Montana negligence law to determine the substantive law governing Oberson's FTCA claim. The court refused the Forest Service's invitation to apply the "gross negligence" standard found in the snowmobile liability statute in light of the fact that this Court in *Brewer v. Ski-Lift, Inc.*, 234 Mont. 109, 762 P.2d 226 (1988), had found a similar provision relating to ski area operators to violate the Equal Protection Clause of the Montana Constitution.

¶10 The court also barred the Forest Service from arguing that the "willful or wanton" conduct standard found in §§ 70-16-301, 302, MCA (1995) (recreational use statute) applied in place of the "gross negligence" provision in the snowmobile liability statute. The court concluded that the more specific snowmobile liability statute had preempted the willful or wanton standard in the recreational use statute. The court determined, in the absence of any other governing statute, that it would apply the catch-all "ordinary care" standard found at § 27-1-701, MCA. The court applied the ordinary care standard to apportion 40% of the responsibility for Musselman's damages to the Forest Service, 10% to Musselman, and 50% to Kalahar and Leinberger jointly.

¶11 The Forest Service appealed the District Court's determination of negligence and its refusal to apply the discretionary function exception of the FTCA. Oberson cross-

5

appealed from the court's liability allocation of 50% to Kalahar and Leinberger. The Ninth Circuit affirmed the District Court "in all respects except that [it left] for future resolution the determinative question of the appropriate standard of care pending the disposition "of this request for certification."

## DISCUSSION

¶12 *Does the gross negligence standard of care in the snowmobile liability statute, Mont. Code Ann. § 23-2-653 (1996), violate the Montana equal protection clause, Mont. Const. art. II, § 4?*

¶13 Oberson challenges the provisions in the snowmobile liability statute that apply a gross negligence standard of care to snowmobile area operators. The statute provides, in relevant part, that a "snowmobile area operator is liable for death or injury to a snowmobiler or other person or property only for an act or omission that constitutes gross negligence." Section 23-2-653(2), MCA (1995). It also provides that a "snowmobile area operator who attempts to eliminate, alter, control, or lessen the risk inherent in the sport of snowmobiling is liable only for an act or omission that constitutes gross negligence." Section 23-2-653(3), MCA (1995).

¶14 We presume that "all statutes are constitutional, and we attempt to construe them in a manner that avoids unconstitutional interpretation." *State v. Trull*, 2006 MT 119, ¶ 30, 332 Mont. 233, ¶ 30, 136 P.3d 551, ¶ 30. This Court requires a party challenging a statute to prove, beyond a reasonable doubt, that the statute is unconstitutional. *Trull*, ¶ 30.

¶15 Oberson contends that this Court's decision in *Brewer* requires us to hold that the

6

snowmobile liability statute's gross negligence provisions violate equal protection. This Court in *Brewer* held that various provisions in §§ 23-2-731 through 737, MCA (1995) (the skier responsibility statutes), violated the "constitutional guarantee of equal protection." *Brewer*, 234 Mont. at 116, 762 P.2d at 231. The Court summarized the unconstitutional provisions as "prohibit[ing] the skier from obtaining legal recourse against an operator even if the injury is proximately caused by the negligent or even intentional actions of the operator." *Brewer*, 234 Mont. at 114, 762 P.2d at 230.

¶16   The Court determined that the skier responsibility statutes sought to "protect[] the ski industry from frivolous lawsuits and liability over which the operator has no control." *Brewer*, 234 Mont. at 113, 762 P.2d at 229. The Court held that "there is no rational relationship between this purpose and requiring that skiers assume all risks for injuries regardless of the cause and regardless of the presence of negligence or intentional conduct on the part of the ski area operator." *Brewer*, 234 Mont. at 115, 762 P.2d at 230. The Court held that these provisions were "needlessly over broad [, going] . . . far beyond the stated purposes of the statutes . . . ." The Court concluded that the provisions could not "pass even a minimum rationality test." *Brewer*, 234 Mont. at 115, 762 P.2d at 230.

¶17   The snowmobile liability statute's statement of purpose closely mirrors the skier responsibility statute's statement of purpose that this Court analyzed in *Brewer*. *Compare* § 23-2-651, MCA (1995) *with* § 23-2-731, MCA (1979). The snowmobile liability statute's purpose is stated fairly as "protecting [snowmobile area operators] from frivolous lawsuits and liability over which the operator has no control." *Brewer*, 234 Mont. at 113, 762 P.2d at 229. Its gross negligence standard of care bears no rational

relationship to this purpose for the same reasons we described in *Brewer*. The statute relieves snowmobile area operators of liability for their "negligen[t] or intentional conduct" that is, by definition, within their control. *Brewer*, 234 Mont. at 115, 762 P.2d at 230.

¶18 The Forest Service correctly points out that "the first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." *Powell v. State Compensation Ins. Fund*, 2000 MT 321, ¶ 22, 302 Mont. 518, ¶ 22, 15 P.3d 877, ¶ 22. It argues that the "legislature here treated all snowmobilers identically, and thus created no distinction or classification that warrants equal protection review." The Forest Service attempts to distinguish this situation from skiing. It argues that the legislature was justified in treating snowmobilers as a unique class in light of the fact that snowmobilers are "unlike skiers and horeseback riders and hikers (for example), . . . because snowmobilers use motorized equipment for high speeds in a natural environment." It also contends that the legislature was particularly concerned with the economic well being of snowmobiling as it has a major effect on the state's economy.

¶19 The basic rule of equal protection "is that persons similarly situated with respect to a legitimate governmental purpose of the law must receive like treatment." *Rausch v. State Compensation Ins. Fund*, 2005 MT 140, ¶ 18, 327 Mont. 272, ¶ 18, 114 P.3d 192, ¶ 18. We do not operate on a blank slate, however, regarding the appropriate classification for our equal protection analysis. We resolved the classifications at issue here in *Brewer* where this Court looked to the statute's purpose in order to determine the threshold

8

question of whether the statute created a discriminatory classification—*i.e.* a classification that treats two or more similarly situated groups in an unequal manner. *Brewer*, 234 Mont at 112-15, 762 P.2d at 228-30. This Court determined in *Brewer* that all inherently dangerous sports, including skiing, were similarly situated with respect to the skier responsibility statute's purpose of immunizing area operators from liability for the inherent risks of the sport for which they provide a venue. *Brewer*, 234 Mont at 112, 762 P.2d at 230. The Court concluded that the skier responsibility statute "classif[ied] skiers and treat[ed] them differently than those who engage in other sports activities which are inherently dangerous." *Brewer*, 234 Mont at 112, 762 P.2d at 228.

¶20 We discern no difference between the snowmobile liability statute's purpose and the skier responsibility statute's purpose. Both statutes seek to prevent frivolous lawsuits by immunizing area operators from the inherent risks of the sport over which the operator has no control. All operators who provide a venue for any inherently dangerous sport are similarly situated with respect to the mischief these statutes propose to remedy. The snowmobile liability statute thus classifies snowmobile area operators and snowmobilers and treats them differently from other similarly situated groups. *Brewer*, 234 Mont at 112, 762 P.2d at 228. These other similarly situated groups, including "ski area operator[s]," § 23-2-733, MCA (1995), "persons responsible for equines," § 27-1-725, MCA (1995), and "outfitters, guides and professional guides," § 37-47-402, MCA (1995), operate pursuant to a general negligence standard. We fail to see how either the unique economics of the snowmobile industry or the addition of a motor distinguishes the snowmobilers from other inherently dangerous sports with respect to the snowmobile

9

liability statute's purpose.

¶21 The Forest Service lastly attempts to distinguish *Brewer* on the grounds that the *Brewer* Court focused on the fact that the skier responsibility statute had relieved the ski area operators of "all duties otherwise owed by a ski area operator to skiers . . . ." We disagree. The *Brewer* Court focused on the fact that the statute immunized the ski area operator from liability that was within the operator's control—*e.g.* their own negligence—despite the legislature's expressed intent to protect the area operator only from liability for risks inherent in the sport. *Brewer*, 234 Mont. at 115, 762 P.2d at 230; *Mead v. M.S.B., Inc.*, 264 Mont. 465, 472, 872 P.2d 782, 787 (1994) (noting that "we concluded [in *Brewer*] that protecting the operators of ski areas from liability for *their own negligence* bore no relationship to protecting them from liability from inherent risks in the sport of skiing.") (Emphasis added).

¶22 We conclude that Oberson has proven, beyond a reasonable doubt, that the "gross negligence" provision in § 23-2-653, MCA (1995), is "over broad," extends "beyond" its stated purpose and fails to pass rational basis review. *Brewer*, 234 Mont at 115, 762 P.2d at 230; *Trull*, ¶ 30. The gross negligence standard of care in the snowmobile liability statute, Mont. Code Ann. § 23-2-653 (1996), violates the Montana equal protection clause, Mont. Const. art. II, § 4.

¶23 *If the snowmobile liability statute's gross negligence standard is unconstitutional, does the recreational use statute's willful or wanton misconduct standard of care, Mont. Code Ann. § 70-16-302(1) (1996), apply in its place?*

¶24 We next determine what standard of care governs the Forest Service's conduct in

the absence of the gross negligence standard. The parties' disagreement on this issue centers around three different statutes, all of which have a different scope of application, and all of which provide a different standard of care. The snowmobile liability statute applies a gross negligence standard to "snowmobile area operators." The "recreational use" statute, § 70-16-302(1), MCA (1995), applies a "willful or wanton" standard to "landowners" who allow individuals to use their land, free of charge, for "recreational uses," such as snowmobiling. Finally, § 27-1-701, MCA, applies an "ordinary care" standard to everyone, "[e]xcept as otherwise provided by law . . . ."

¶25 The parties correctly point out that the gross negligence standard in the snowmobile liability statute would govern the actions of the Forest Service if it were constitutional, in light of the fact that the snowmobile liability statute is the most specific of the three statutes with respect to "snowmobile area operators." *See* § 1-2-102, MCA ("[w]hen a general and particular provision are inconsistent, the latter is paramount to the former . . . ."); *see also Whalen v. Montana Right To Life Ass'n*, 2002 MT 328, ¶ 9, 313 Mont. 204, ¶ 9, 60 P.3d 972, ¶ 9 ("[t]his Court has repeatedly held that 'when a general statute and a specific statute are inconsistent, the specific statute governs, so that a specific legislative directive will control over an inconsistent general provision.'"). The Forest Service argues, however, that the willful or wanton standard described in Montana's recreational use statute, § 70-16-302(1), MCA (1995), should apply in the absence of the snowmobile liability statute's gross negligence standard. It argues that "if the snowmobile statute was unconstitutional, and hence a nullity, at the time of the incident in this case," then the recreational use statute would provide the governing

standard of care in light of the fact that it represents the next most specific statute with respect to snowmobilers and snowmobile area operators. The Forest Service's argument hinges, however, upon this Court declaring the entire snowmobile liability statute unconstitutional.

¶26 Our decision does not void the entire snowmobile liability statute. A statute "'is not destroyed in toto because of an improper provision unless such provision is necessary to the integrity of the statute or was the inducement to its enactment.'" *Montana Auto Ass'n v. Greely*, 193 Mont. 378, 399, 632 P.2d 300, 311 (1981) (quoting *Hill v. Rae*, 52 Mont. 378, 389-90, 158 P. 826, 831 (1916)). We cannot say that removing the gross negligence standard destroys the integrity of the snowmobile liability statute in light of the fact that the legislature amended the statute in 1999, following the federal district court's decision in *Riska v. USDA*, CV-96-63-BU-DWM (D. Mont. Oct 14, 1997). The federal court held that the gross negligence standard violated equal protection pursuant to our decision in *Brewer*. The legislature's amended version contains a general negligence standard. We likewise cannot determine that the gross negligence provision induced the legislature to enact the snowmobile liability statute when the legislature enacted the skier responsibility statute, the equine liability statute, §§ 27-1-725 through 727, MCA (1995), and the outfitter and guide liability statute, §§ 37-47-401 through 404, MCA (1995), with a general negligence standard. As a result, we strike only those provisions that apply a gross negligence standard of care to snowmobile area operators. We leave the remainder of the statute intact, including those provisions in §§ 23-2-653(1) and (3), MCA (1995),

12

describing the duties of snowmobile area operators, and in § 23-2-654, MCA (1995), describing the responsibilities of snowmobilers.

¶27 This Court took a similar approach in *Brewer*, 234 Mont. at 116, 762 P.2d at 231, when we left the remainder of the skier responsibility statute in force after striking several sections of the statute as unconstitutional. The snowmobile liability statute otherwise continues to control the duties and responsibilities of the Forest Service in this case. The more general recreational use statute's willful or wanton misconduct standard of care, Mont. Code Ann. § 70-16-302(1), MCA (1995), has no application under these circumstances.

¶28 *If neither the snowmobile liability statute nor the recreational use statute provide an applicable standard of care, does the ordinary care standard, Mont. Code Ann. § 27-1-701, apply?*

¶29 We address finally the question of what standard to apply to the Forest Service's conduct now that we have declared unconstitutional the only explicit standard of care in the snowmobile liability statute. This Court faced a similar situation in *Mead* where the plaintiff brought a negligence claim against a ski resort for injuries that he sustained when he struck a rock outcropping while skiing. *Mead*, 264 Mont. at 468, 872 P.2d at 784.

¶30 The plaintiff claimed that the ski resort negligently had designed, constructed, and maintained the ski trail on which he was injured. *Mead*, 264 Mont. at 468, 872 P.2d at 784. The ski resort responded that its duties were limited to those duties enumerated in the 1989 skier responsibility statute. The ski resort noted specifically that the legislature

13

had failed to list the duty of ordinary care among the duties enumerated in the statute. *Mead,* 264 Mont. at 471, 872 P.2d at 786. This Court determined that the general statutory duty of ordinary care, as defined in § 27-1-701, MCA, applied to ski area operators even though the skier responsibility statute enumerated no such duty. *Mead,* 264 Mont. at 474, 872 P.2d at 788.

¶31    Our decision at ¶¶ 13-22 to strike the gross negligence standard in the snowmobile liability statute leaves the statute in a state similar to the skier responsibility statute that we construed in *Mead*. The snowmobile liability statute now enumerates the duties and responsibilities of the snowmobile area operators and snowmobilers without a specified standard of care. Our holding in *Mead* requires, under these circumstances, that the general statutory duty of due care, set forth in § 27-1-701, MCA, provides the standard of care to govern the Forest Service's actions in this case. *Mead*, 264 Mont. at 474, 872 P.2d at 788.

¶32    For the reasons set forth we answer, "yes," "no," and "yes," respectively, to the three questions certified to this Court by the Ninth Circuit.

                                                           /S/ BRIAN MORRIS


We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART


14

Justice W. William Leaphart concurring.

¶33   I specially concur only to point out that in ¶ 22, the Court notes that "Oberson has proven, beyond a reasonable doubt, that the 'gross negligence' provision in § 23-2-653, MCA (1995), is 'overbroad,' extends 'beyond' its stated purpose and fails to pass rational basis review." This Court has applied this "beyond a reasonable doubt" standard to constitutional challenges for over 100 years, beginning with *State v. Camp Sing*, 18 Mont. 128, 44 P. 516 (1896). The standard is applied by many of our sister states, too numerous to cite. It also finds support in a very early decision from the United States Supreme Court:

> "It must be remembered that, for weighty reasons, it has been assumed as a principle, in construing constitutions, by the Supreme Court of the United States, by this court and by every other court of reputation in the United States, that an act of the legislature is not to be declared void unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt;" and, in *Fletcher v. Peck*, Chief Justice Marshall said, "It is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers and its acts to be considered void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other." It is incumbent, therefore, upon those who affirm the unconstitutionality of an act of Congress to show clearly that it is in violation of the provisions of the Constitution. It is not sufficient for them that they succeed in raising a doubt.

*Legal Tender Cases, Knox v. Lee, Parker v. Davis*, 79 U.S. 457, 531 (1870).

¶34   Despite this time-honored and well accepted standard of proving unconstitutionality, I nonetheless find this to be an incongruous standard to apply to the proving of a legal proposition as opposed to an issue of fact. I agree with the New York Federal District Court's observation that the "beyond a reasonable doubt" standard is an

15

"absurd standard of decision" for a question of law. *Blue Sky Entertainment, Inc. v. Town of Gardiner*, 711 F. Supp. 678, 698 n. 19 (N.D.N.Y. 1989). In *Branson School District RE-82 v. Romer*, 161 F.3d 619, 636-37, n. 15 (10th Cir. 1998), the Tenth Circuit elaborated:

> The court below, and the plaintiffs themselves, assumed on the basis of district court precedent that the plaintiffs must prove the unconstitutionality of Amendment 16 "beyond a reasonable doubt." [Citations omitted.] This circuit has never applied such a standard of proof to a purely legal question of whether a statute is facially unconstitutional. *Cf. Blue Sky Entertainment, Inc. v. Town of Gardiner*, 711 F.Supp. 678, 698 n. 19 (N.D.N.Y. 1989) ("In essence, the 'beyond a reasonable doubt' standard is suited to resolving questions which involve some element of fact. A question of law is not decided by any standard of decision prescribed for a trier of fact.").

¶35 I suggest that the Court adopt a standard whereby we invalidate a legislative enactment only upon a plain showing by the challenger that the legislation in question lacks a rational basis. *See U.S. v. Mugan*, 441 F.3d 622, 627 (8th Cir. 2006); *U.S. v. Suarez*, 263 F.3d 468, 476 (6th Cir. 2001); and *Benning v. Georgia*, 391 F.3d 1299, 1303 (11th Cir. 2004).

¶36 However, when reviewing a constitutional challenge under strict scrutiny or middle-tier analysis, the burden to sustain the legislation would be upon the government. For example, to withstand strict scrutiny analysis, the government must demonstrate that the legislation at issue is justified by a compelling state interest and that it is narrowly tailored to effectuate only that interest. *Valley Christian School v. High School*, 2004 MT 41, ¶ 29, 320 Mont. 81, ¶ 29, 86 P.3d 554, ¶ 29. Similarly, middle-tier scrutiny requires the State to demonstrate that the law in question is reasonable and its interest in the

16

resulting classification outweighs the value of the right of the individual. *Snetsinger v. Montana University System*, 2004 MT 390, ¶ 18, 325 Mont. 148, ¶ 18, 104 P.3d 445, ¶ 18. Both of these burdens are the State's—not the challenger's.

¶37 Therefore, I would apply the "plain showing of unconstitutionality" burden in challenges reviewed for rational basis, but I would continue to hold the State to its different burdens where it is the government's obligation to demonstrate that the challenged statute withstands middle-tier or strict scrutiny analysis.

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson and Justice Patricia Cotter join in the concurring opinion of Justice Leaphart.

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER

Justice Jim Rice, dissenting.

¶38 The Court fails to properly apply rational basis review, inappropriately relies on *Brewer* to support its holding, and usurps the role of the legislature to create its own

17

broad classification encompassing all "inherently dangerous sports."  For these reasons, I dissent.

¶39     Despite purporting to apply a rational basis review to the snowmobile liability statute, the Court fails to either enunciate or apply the proper standards for an equal protection challenge.

> "The constitutionality of a legislative enactment is prima facie presumed, and *every intendment in its favor will be presumed,* unless its unconstitutionality appears beyond a reasonable doubt.  *The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action* which will not be declared invalid unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt."  *Every possible presumption* must be indulged in favor of the constitutionality of a legislative act.  The party challenging a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt and, *if any doubt exists, it must be resolved in favor of the statute.*

*Powell v. State Compensation Ins. Fund*, 2000 MT 321, ¶ 13, 302 Mont. 518, ¶ 13, 15 P.3d 877, ¶ 13 (citations omitted) (emphasis added) (quoting *Stratemeyer v. Lincoln County*, 259 Mont. 147, 150, 855 P.2d 506, 508-09 (1993)).  We are to declare a statute to be valid "unless the constitutional violation is 'clear and palpable.'"  *Linder v. Smith*, 193 Mont. 20, 31, 629 P.2d 1187, 1193 (1981) (citing *Noll & Kenneady v. Bozeman*, 166 Mont. 504, 507, 534 P.2d 880, 881 (1975)).

¶40     The Court glosses over the proper rational basis standard of review, never applying it in the subsequent discussion.  "As explained by the United States Supreme Court, to survive scrutiny under the rational basis test, classifications must be reasonable, not arbitrary, and they must bear a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."  *Montana*

18

*Stockgrowers Assoc. v. State Dept. of Revenue*, 238 Mont. 113, 117-18, 777 P.2d 285, 288 (1989) (citing *Eisenstadt v. Baird*, 405 U.S. 438, 447, 92 S. Ct. 1029, 1035 (1972)). Such a review, by definition, allows for the utmost deference to our legislature's decision: *any* conceivable purpose will satisfy rational basis review. *See Johnson v. Sullivan*, 174 Mont. 491, 498, 571 P.2d 798, 802 (1977) (citations and internal quotation marks omitted) ("[I]n applying this rational basis test, a discrimination will not be set aside if *any state of facts reasonably may be conceived to justify it*."). "The burden is therefore on the one attacking the classification to negative every conceivable basis which might support it, at least where no fundamental right is imperiled." *Montana Stockgrowers Assoc.*, 238 Mont. at 119, 777 P.2d at 289 (quoting *American Mobile Home Assoc. v. Dolan*, 553 P.2d 758, 762 (Colo. 1976)).

¶41    In my view, the Court has not engaged in the aforementioned analysis, and no such showing has been made by the parties that the snowmobile liability statute represents a "clear and palpable violation" of the Constitution. Rather than apply rational basis review and acknowledge that the legislature is entitled to significant deference under that standard, the Court jumps straight to the conclusion that because "[t]he snowmobile liability statute's statement of purpose closely mirrors the skier responsibility statute's statement of purpose," and because this Court found the skier liability statute in *Brewer* unconstitutional, the same must be true of the snowmobile liability statute at issue here. However, the Court's reliance on *Brewer* is inappropriate, because an essential component to the holding in *Brewer* was the Court's finding that the skier liability statute eliminated *all* duties a ski area operator owed to its users. Such is

19

not the case here, where the legislature has decided to limit, but not eliminate, the duties a snowmobile area operator owes to its users. To the contrary, an elementary rational basis review leads to the conclusion that the legislature did have a conceivable basis for limiting the liability of snowmobile area operators, including reducing the cost of liability insurance and preventing frivolous lawsuits. As Justice McDonough noted in his dissent to *Brewer*, such purposes have long been recognized by other courts as a valid basis for classification. *Brewer*, 234 Mont. at 117, 762 P.2d at 232 (McDonough, J., dissenting) (citing cases). Furthermore, the statute still provides an avenue for compensating snowmobilers who are injured due to gross negligence. A proper rational basis review clearly distinguishes *Brewer* and clearly satisfies the rational basis test.

¶42 It is not supposed to be this Court's role to decide how to classify various groups for the purposes of equal protection. "A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." *Plyler v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394 (1982). Such classifications need not be perfect or ideal. *See Marshall v. U.S.*, 414 U.S. 417, 428, 94 S. Ct. 700, 707 (1974) ("The line drawn by Congress at two felonies . . . might, with as much soundness, have been drawn instead at one, but this was for legislative, not judicial choice."). Nonetheless, the Court has taken it upon itself to lump all "inherently dangerous sports" into one broad category.

¶43 The Court fails to acknowledge that within the spectrum of outdoor recreational activities, some activities are more dangerous than others. As Justice McDonough said in *Brewer*:

> Risk distinctions between sports exist, and rational choices based on the perceived distinctions are made everyday. Sky diving and bull riding are to some people considered dangerous, while football is not. The legislature should be free to recognize the degrees of such risk and impose duties and obligations where needed.

*Brewer*, 234 Mont. at 117, 762 P.2d at 231-32 (McDonough, J., dissenting). It is the province of the legislature, not this Court, to draw those lines. *See Meech v. Hillhaven West, Inc.*, 238 Mont. 21, 31-33, 776 P.2d 488, 493-95 (1989). Traditionally, the legislature has been free to draw those lines in a way that might expand or limit tort liability as it sees fit. As we said in *Meech*, "[l]egislative decisions to expand liability to further various policy objectives are debated and passed almost routinely. In a like manner, for policy reasons, the Legislature debates and passes statutes that take away causes of action and/or constrict liability." *Meech*, 238 Mont. at 33, 776 P.2d at 495. This exercise in line drawing obviously includes the task of setting aside particular classes so as to expand or limit tort liability. Provided the classification has a conceivable basis, it does not offend the Constitution "merely because it is not made with mathematical nicety, or because in practice it results in some inequality." *Lindsley v. Nat. Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S. Ct. 337, 340 (1911).

¶44 The class at issue in this case should be "snowmobilers," rather than all "inherently dangerous sports," a label for which no definition exists and for which no line

has been drawn.[1]  The reason the legislature should be allowed to distinguish snowmobiling from other dangerous activities is the same reason that snowmobiling is such a popular winter activity: snowmobiles have motors.  People want to snowmobile because the machine allows them to go faster, usually over snow, up steeper inclines (possibly resulting in avalanches), and jump farther through the air.  Among wintertime activities, snowmobiles are uniquely equipped for these pursuits.  Take off the motor, and snowmobiles become considerably less attractive as a recreational device.  This one fundamental fact not only draws people to snowmobiling (rather than, say, cross-country skiing), but also warrants and justifies a different classification.  Snowmobilers are not "similarly situated" to skiers, horseback riders, or outfitters and guides, as the Court contends.  Rather, it is the unique dangers inherent only in snowmobiling that led the legislature to exempt snowmobile area operators from liability, provided they were not guilty of gross negligence.  The distinction between snowmobiling and other sports is conceivable and thus capable of satisfying rational basis review—and is precisely the sort of line-drawing the legislature—not this Court—should undertake.  To classify all "inherently dangerous activities" as "similarly situated" offends that role which our Constitution has given to the legislature separate and apart from this Court.

¶45    The Court, in offering an analysis which relies almost exclusively on *Brewer*, has failed to give any deference to the conceivable purpose behind the snowmobile liability

---

[1] Is swimming "inherently dangerous" to the same extent that downhill skiing is? What about cross-country skiing?  Skydiving?  Freestyle motorcycle dirt jumping? Kayaking? And are all such sports as "inherently dangerous" as riding a snowmobile? One who would answer these questions should sit in a legislator's seat.

statute, and thus has failed to properly exercise rational basis review. For these reasons, I would answer the Circuit Court's question of whether the gross negligence standard of care in the snowmobile liability statute violates the Montana Constitution's equal protection clause in the negative, and would not reach the remaining two issues.


/S/ JIM RICE


Chief Justice Karla M. Gray and Justice John Warner join the dissenting opinion of Justice Rice.


/S/ KARLA M. GRAY
/S/ JOHN WARNER