JUSTICE RICE,
dissenting.
¶38 The Court fails to properly apply rational basis review, inappropriately relies on Brewer to support its holding, and usurps the role of the legislature to create its own broad classification encompassing all “inherently dangerous sports.” For these reasons, I dissent.
¶39 Despite purporting to apply a rational basis review to the snowmobile liability statute, the Court fails to either enunciate or apply the proper standards for an equal protection challenge.
“The constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be presumed, unless its unconstitutionality appears beyond a reasonable doubt. The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action which will not be declared invalid unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt.” Every possible presumption must be indulged in favor of the constitutionality of a legislative act. The party challenging a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt and, if any doubt exists, it must be resolved in favor of the statute.
Powell v. State Compensation Ins. Fund, 2000 MT 321, ¶ 13, 302 Mont. 518, ¶ 13, 15 P.3d 877, ¶ 13 (citations omitted) (emphasis added) (quoting Stratemeyer v. Lincoln County, 259 Mont. 147, 150, 855 P.2d 506, 508-09 (1993)). We are to declare a statute to be valid “unless the constitutional violation is ‘clear and palpable.’ ” Linder v. Smith, 193 Mont. 20, 31, 629 P.2d 1187, 1193 (1981) (citing Noll & Kenneady v. Bozeman, 166 Mont. 504, 507, 534 P.2d 880, 881 (1975)).
¶40 The Court glosses over the proper rational basis standard of review, never applying it in the subsequent discussion. “As explained by the United States Supreme Court, to survive scrutiny under the rational basis test, classifications must be reasonable, not arbitrary, and they must bear a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated *532 alike.” Montana Stockgrowers Assoc. v. State Dept. of Revenue, 238 Mont. 113, 117-18, 777 P.2d 285, 288 (1989) (citing Eisenstadt v. Baird, 405 U.S. 438, 447, 92 S. Ct. 1029, 1035 (1972)). Such a review, by definition, allows for the utmost deference to our legislature’s decision: any conceivable purpose will satisfy rational basis review. See Johnson v. Sullivan, 174 Mont. 491, 498, 571 P.2d 798, 802 (1977) (citations and internal quotation marks omitted) (“[I]n applying this rational basis test, a discrimination will not be set aside if any state of facts reasonably may be conceived to justify it”). “The burden is therefore on the one attacking the classification to negative every conceivable basis which might support it, at least where no fundamental right is imperiled.” Montana Stockgrowers Assoc., 238 Mont. at 119, 777 P.2d at 289 (quoting American Mobile Home Assoc. v. Dolan, 553 P.2d 758, 762 (Colo. 1976)).
¶41 In my view, the Court has not engaged in the aforementioned analysis, and no such showing has been made by the parties that the snowmobile liability statute represents a “clear and palpable violation” of the Constitution. Rather than apply rational basis review and acknowledge that the legislature is entitled to significant deference under that standard, the Court jumps straight to the conclusion that because “[t]he snowmobile liability statute’s statement of purpose closely mirrors the skier responsibility statute’s statement of purpose,” and because this Court found the skier liability statute in Brewer unconstitutional, the same must be true of the snowmobile liability statute at issue here. However, the Court’s reliance on Brewer is inappropriate, because an essential component to the holding in Brewer was the Court’s finding that the skier liability statute eliminated all duties a ski area operator owed to its users. Such is not the case here, where the legislature has decided to limit, but not eliminate, the duties a snowmobile area operator owes to its users. To the contrary, an elementary rational basis review leads to the conclusion that the legislature did have a conceivable basis for limiting the liability of snowmobile area operators, including reducing the cost of liability insurance and preventing frivolous lawsuits. As Justice McDonough noted in his dissent to Brewer, such purposes have long been recognized by other courts as a valid basis for classification. Brewer, 234 Mont. at 117, 762 P.2d at 232 (McDonough, J., dissenting) (citing cases). Furthermore, the statute still provides an avenue for compensating snowmobilers who are injured due to gross negligence. A proper rational basis review clearly distinguishes Brewer and clearly satisfies the rational basis test.
*533 ¶42 It is not supposed to be this Court’s role to decide how to classify various groups for the purposes of equal protection. “A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill.” Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394 (1982). Such classifications need not be perfect or ideal. See Marshall v. U.S., 414 U.S. 417, 428, 94 S. Ct. 700, 707 (1974) (“The line drawn by Congress at two felonies ... might, with as much soundness, have been drawn instead at one, but this was for legislative, not judicial choice.”). Nonetheless, the Court has taken it upon itself to lump all “inherently dangerous sports” into one broad category.
¶43 The Court fails to acknowledge that within the spectrum of outdoor recreational activities, some activities are more dangerous than others. As Justice McDonough said in Brewer:
Risk distinctions between sports exist, and rational choices based on the perceived distinctions are made everyday. Sky diving and bull riding are to some people considered dangerous, while football is not. The legislature should be free to recognize the degrees of such risk and impose duties and obligations where needed.
Brewer, 234 Mont. at 117, 762 P.2d at 231-32 (McDonough, J., dissenting). It is the province of the legislature, not this Court, to draw those lines. See Meech v. Hillhaven West, Inc., 238 Mont. 21, 31-33, 776 P.2d 488, 493-95 (1989). Traditionally, the legislature has been free to draw those lines in a way that might expand or limit tort liability as it sees fit. As we said in Meech, “[Legislative decisions to expand liability to further various policy objectives are debated and passed almost routinely. In a like manner, for policy reasons, the Legislature debates and passes statutes that take away causes of action and/or constrict liability.” Meech, 238 Mont. at 33, 776 P.2d at 495. This exercise in line drawing obviously includes the task of setting aside particular classes so as to expand or limit tort liability. Provided the classification has a conceivable basis, it does not offend the Constitution “merely because it is not made with mathematical nicety, or because in practice it results in some inequality.” Lindsley v. Nat. Carbonic Gas Co., 220 U.S. 61, 78, 31 S. Ct. 337, 340 (1911).
¶44 The class at issue in this case should be “snowmobilers,” rather than all “inherently dangerous sports,” a label for which no definition *534 exists and for which no line has been drawn.[1] The reason the legislature should be allowed to distinguish snowmobiling from other dangerous activities is the same reason that snowmobiling is such a popular winter activity: snowmobiles have motors. People want to snowmobile because the machine allows them to go faster, usually over snow, up steeper inclines (possibly resulting in avalanches), and jump farther through the air. Among wintertime activities, snowmobiles are uniquely equipped for these pursuits. Take off the motor, and snowmobiles become considerably less attractive as a recreational device. This one fundamental fact not only draws people to snowmobiling (rather than, say, cross-country skiing), but also warrants and justifies a different classification. Snowmobilers are not “similarly situated” to skiers, horseback riders, or outfitters and guides, as the Court contends. Rather, it is the unique dangers inherent only in snowmobiling that led the legislature to exempt snowmobile area operators from liability, provided they were not guilty of gross negligence. The distinction between snowmobiling and other sports is conceivable and thus capable of satisfying rational basis review-and is precisely the sort of line-drawing the legislature-not this Court-should undertake. To classify all “inherently dangerous activities” as “similarly situated” offends that role which our Constitution has given to the legislature separate and apart from this Court.
¶45 The Court, in offering an analysis which relies almost exclusively on Brewer, has failed to give any deference to the conceivable purpose behind the snowmobile liability statute, and thus has failed to properly exercise rational basis review. For these reasons, I would answer the Circuit Court’s question of whether the gross negligence standard of care in the snowmobile liability statute violates the Montana Constitution’s equal protection clause in the negative, and would not reach the remaining two issues.
CHIEF JUSTICE GRAY and JUSTICE WARNER join the dissenting opinion of JUSTICE RICE.

 Is swimming “inherently dangerous” to the same extent that downhill skiing is? What about cross-country skiing? Skydiving? Freestyle motorcycle jumping? Kayaking? And are all such sports as “inherently dangerous” as riding a snowmobile? One who would answer these questions should sit in a legislator’s seat.